IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

COUNTRYWIDE HOME LOANS, INC. )
a New York Corporation, )
)
                    Plaintiff, )
        v. )
)
UNITED STATES OF AMERICA, )
acting through the Internal Revenue )
Service; LA JOLLA GROUP II, an )
entity form unknown; TERRANCE )
FRAZIER, individually and dba La Jolla )
Group II; NEVADA TRUST DEED )
SERVICES INC., a Nevada Corporation; )
LA SALLE NATIONAL BANK, as )
TRUSTEE FOR AVONDALE HOME )
EQUITY LOAN TRUST 1998-1, an )
entity form unknown; ROBERT G. )
GONZALES, an individual; MARISELA )
GONZALES, an individual; ALL )
PERSONS KNOWN AND UNKNOWN )
CLAIMING A RIGHT, TITLE OR )
INTEREST IN OR TO THE REAL )
PROPERTY COMMONLY KNOWN )
AS 765 EAST WOODHAVEN LANE, )
FRESNO, CALIFORNIA, )
)
                    Defendants. )
_____ )
)
and related cross and counter claims. )
)

CV F 02  6405 AWI SMS

**MEMORANDUM OPINION AND
ORDER DENYING MOTIONS TO
DISMISS**

(Documents #185, #186, #187, & #189)

## BACKGROUND

This action concerns title to property commonly known as 765 East Woodhaven Lane,

Fresno ["the Property"].  The prior owners, Robert G. Gonzales and Marisela Gonzales ["the

Gonzales"], had two deeds of trust on the Property.  The first or senior lien was with

Countrywide Home Loans, Inc. ["Countrywide"].  The second or junior lien was with LaSalle

National Bank ["LaSalle].   The United States also had placed a tax lien on the Property.   On August 3, 2001, CTC, filed a full reconveyance of Countrywide's loan.  LaSalle then foreclosed on the Property using Nevada Trust Deed Services Inc. ["Nevada Trust"] as its title company. At the foreclosure sale conducted on August 15, 2002, the Property was sold to LaJolla Group II ["LaJolla"] and Terrance Frazier ["Frazier"].   The original issues presented in the complaint and counterclaims concerned the legality of the sale, what liens remained on the property, and the priority of the remaining liens.  However, on June 24, 2004, Nevada Trust filed a notice of rescission of the trustee's deed of sale conducted on August 15, 2002.

On June 29, 2004, Countrywide filed a motion to dismiss the complaint without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure and requested the court decline to exercise supplemental jurisdiction over the cross complaint filed by LaJolla and Frazier.   On August 2, 2004, LaJolla and Frazier filed an opposition to the motion to dismiss.   LaJolla and Frazier contended that they should be allowed to proceed on their counterclaims and cross claims because they believe the August 15, 2002 sale was lawful and the June 24, 2004 rescission was unlawful.  On October 12, 2004, the court granted Countrywide's motion to dismiss the complaint.  However, the court stated it would continue to exercise supplemental jurisdiction over the counterclaim for thirty days to allow LaJolla and Frazier to file an amended counterclaim and cross complaint that provided a basis for the court's jurisdiction.

On November 12, 2004, LaJolla and Frazier filed a motion for leave to file an amended counterclaim and cross-claim ("amended counterclaim).  On December 1, 2004, Countrywide, CTC, LaSalle, and Nevada Trust filed an opposition to LaJolla and Frazier's motion.  They contended that the motion was not timely and any amendment would be futile because LaSalle and Nevada Trust had the right to rescind the sale.  On December 2, 2004, the United States filed a response.  The United States contended that it was not given proper notice of the trustee's sale. On December 23, 2004, the Magistrate Judge granted LaJolla and Frazier's motion to file an amended counterclaim.

On January 5, 2005, LaJolla and Frazier filed the amended counterclaim.  The first cause of action requests declaratory relief against Countrywide, the United States, and the Gonzales, finding that LaJolla and Frazier own the property free of any liens by Countrywide and the United States.   The second cause of action requests quiet title.   The third cause of action requests the return of money given to Countrywide in the event the court finds LaJolla and Frazier do not own the property.  The fourth cause of action requests the return of money given to LaSalle and Nevada Trust.   The fifth cause of action alleges negligence by Countrywide and CTC in recording the full reconveyance.

On February 16, 2005, LaSalle and Nevada Trust filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   LaSalle and Nevada Trust contend the quiet title cause of action is without merit because LaSalle had the right to authorize Nevada Trust to rescind the sale pursuant to California Civil Code § 2924b(c)(4) when LaSalle determined that the United States had not been given proper notice.    LaSalle and Nevada Trust contend that Countrywide's agreement to pay LaJolla and Frasier the $24,200 plus interest and costs that LaJolla and Frasier gave to Nevada Trust for the Property defeats the fourth cause of action.

On February 16, 2005, Countrywide and CTC filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Countrywide and CTC contend that the notice of rescission was valid because LaSalle had the right to authorize Nevada Trust to issue the rescission.   Countrywide and CTC contend the third and fourth causes of action should be dismissed because Countrywide has offered to repay LaJolla and Frasier the funds they are owed.  Countrywide and CTC contend the fifth cause of action for negligence fails to state a claim because Countrywide and CTC did not owe third parties any duty when the reconveyance was issued.

On March 7, 2005, LaJolla and Frazier filed an opposition.  LaJolla and Frazier contend that Section 2924b(c)(4) was not intended to apply where there has been collusion by a third

3

party to utilize the statute.  La Jolla and Frazier contend that because rescission is an equitable remedy, the defense of laches is available.   LaJolla and Frazier also do not concede that the United States was not given proper notice.   LaJolla and Frazier contend that their negligence claim is sufficient because the court has previously found this claim is available.

On March 14, 2004, Countrywide and CTC filed a reply.  On March 14, 2005, LaSalle and Nevada Trust file a reply.

**LEGAL STANDARD**

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).  A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9TH Cir.1984).  In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969).

Essentially, a motion to dismiss for failure to state a claim tests plaintiff's compliance with the liberal requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.  See 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294-96.  The burden imposed by Rule 8(a)(2) is a minimal one. Rule 8(a)(2) requires parties seeking relief in federal court by way of complaint, counterclaim, cross-claim, or third party complaint, to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). It is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have not been met.  See Kehr Packages, Inc. v.

4

Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.1991) ("[U]nder Rule 12(b)(6) the defendant has the burden of showing no claim has been stated.").   As the Supreme Court has noted, when evaluating a complaint for failure to state a claim, the question is not whether the facts stated in the complaint, if proven, would entitle the plaintiff to any relief. Instead, the question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002);  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Diaz v. Gates, 380 F.3d 480, 482 (9th Cir. 2004).

## ALLEGED FACTS

This action concerns real property commonly known as 765 E. Woodhaven Lane, Fresno, California, and is legally described as:"Lot 14 of Tract No. 3374, Mount Vernon Place No. 1, in the City of Fresno, County of Fresno, State of California, according to the map recorded August 24, 1984, in Book 41 at Pages 97 to 100, inclusive, of Maps, Fresno County records" ("the Property").

On or about January 9, 1994, Countrywide, through its predecessor-in-interest, caused to be recorded with the office of the Fresno County Recorder a deed of trust encumbering the subject property (the "Countrywide Trust Deed").   On or about February 25, 1998, LaSalle, through its predecessor-in-interest, caused to be filed with the office of the Fresno County Recorder a deed of trust (the "La Salle Trust Deed").

On or about August 3, 2001, CTC made, executed, and caused to be recorded a Full Reconveyance of the Countrywide Trust Deed. At the time the Full Reconveyance was executed and recorded, CTC was the trustee under the Countrywide Trust Deed.

On or about November 21, 2001, Nevada Trust caused to be recorded with the office of the Fresno County Recorder a notice of default relating to the La Salle Trust Deed. At the time of recording, Nevada Trust was the trustee under the LaSalle Trust Deed.  On or about February 28, 2002, Nevada Trust caused to be recorded with the office of the Fresno County Recorder a notice

of sale relating to the LaSalle Trust Deed. On August 15, 2002, pursuant to the previously recorded notice of default and notice of sale, Nevada Trust held a foreclosure sale relating to the LaSalle Trust Deed.

The amended counterclaim alleges that LaJolla and Frazier became aware of the pending foreclosure proceedings instituted by LaSalle after the recording of the LaSalle notice of default on November 21, 2001.   The amended counterclaim alleges that LaJolla and Frazier examined public records at the Fresno County Recorder's office related to the subject property and determined that as a result of the full reconveyance recorded August 3, 2001, the LaSalle Trust Deed remained the only deed of trust of record encumbering the Property. Thereafter, LaJolla and Frazier followed the progress of LaSalle's foreclosure proceedings and appeared at LaSalle's foreclosure sale on August 15, 2002. At that time, and based on their examination of Fresno County Recorder's office records including the Full Reconveyance of the Countrywide Trust Deed, LaJolla and Frazier submitted bids at the LaSalle foreclosures sale.

LaJolla and Frazier submitted the successful bid at the August 15, 2002, foreclosure sale held by Nevada Trust.  LaJolla and Frazier delivered the sum of $24,200.00 to Nevada Trust in consideration for the delivery of a Trustee's Deed Upon Sale dated August 15, 2002, which was recorded with the office of the Fresno County Recorder on August 27, 2002.

The amended counterclaim alleges that Nevada Trust conducted its foreclosure sale on August 15, 2002, in full compliance with the applicable statutes of the State of California.

The amended counterclaim alleges that in September 2002, Countrywide threatened to complete a foreclosure sale under its deed of trust recorded February 9, 1994, despite the existence of the full reconveyance.   The amended counterclaim alleges LaJolla and Frazier, attempted to contact Countrywide in order to obtain a delay of the foreclosure sale pending a resolution of the disputed claims between them. When Countrywide would not agree to delay its foreclosure sale, LaJolla and Frazier caused to be delivered to Countrywide the sum of $22,721.22 for the purpose of preventing Countrywide from conducting the threatened

6

1  foreclosure sale and to thereby preserve LaJolla and Frazier's assertion that Countrywide is not
2  entitled to complete its foreclosure proceeding.

3      The amended counterclaim alleges that on or about May 3, 2004, Countrywide, Nevada
4  Trust, and LaSalle entered into a settlement agreement, which contemplated the rescission of the
5  Trustees Deed Upon Sale for the foreclosure sale conducted on August 15, 2002. Under the terms
6  of the settlement, LaSalle assigned its promissory note and deed of trust to Countrywide.
7  Pursuant to the settlement, Nevada Trust executed and caused to be recorded on June 24,2004, a
8  Notice of Rescission of Trustee's Deed Upon Sale ("Notice of Rescission"), thereby purporting
9  to rescind the Trustee's Deed Upon Sale, which had been issued in favor of LaJolla and Frazier
10 and recorded on August 27, 2002.

11     The amended counterclaim alleges that CTC is an entity related to Countrywide as a
12 wholly owned subsidiary.  Alternatively, LaJolla and Frazier are informed and believe and
13 thereon allege that CTC is related to Countrywide because CTC is wholly owned by the parent
14 company of Countrywide.

15     Countrywide contends that CTC recorded the Full Reconveyance on August 3,
16 2001, without its direction or authority.

17     The amended counterclaim alleges that LaJolla and Frazier reasonably relied on the Full
18 Reconveyance of record when deciding to participate in the LaSalle foreclosure sale held on
19 August 15, 2002.  Had the Full Reconveyance not appeared of record, LaJolla and Frazier, would
20 not have submitted their bids at the August 15, 2002, foreclosure sale.

21                                   **DISCUSSION**
22 **A. Declaratory Relief and Quiet Title**

23     In their first two causes of action, LaJolla and Frazier request a declaration that their
24 ownership and title in the Property is free and clear of any claim of Countrywide, the United
25 States, and the Gonzales and request quiet title to the Property.   In these causes of action, LaJolla
26 and Frazier contend that there was no legal basis for recording the Notice of Rescission and that

27
28                                        7

the Notice of Rescission has no force and effect.   LaJolla and Frazier argue that they are the true and rightful owners of the Property pursuant to the Trustee's Deed Upon Sale dated August 15, 2002.

Countrywide, CTC, LaSalle, and Nevada Trust contend that LaJolla and Frazier's first two causes of action are subject to dismissal pursuant to Rule 12(b)(6).  In their motions to dismiss, Countrywide, CTC, LaSalle, and Nevada Trust contend that as a result of the recording of the Notice of Rescission, Countrywide's interest in the Property as the assignee of the note and deed of trust foreclosed upon has been restored and that the status of title to the real property is as it existed prior to the August 15, 2002 foreclosure sale.  The United States' position is that its tax lien against the property was not extinguished by the August 15, 2002 foreclosure sale.   LaSalle and Nevada Trust also contend that they no longer have any interest in the property and are not proper Defendants.

Countrywide, CTC, LaSalle, and Nevada Trust contend that the rescission was valid because the IRS was never given proper notice of the trustee's sale. California Civil Code § 2924b(c) provides in part:

> The mortgagee, trustee, or other person authorized to record the notice of default or the notice of sale shall do the following:
> . . . .
> (4) Provide a copy of the notice of sale to the Internal Revenue Service, in accordance with Section 7425 of the Internal Revenue Code and any applicable federal regulation, if a "Notice of Federal Tax Lien under Internal Revenue Laws" has been recorded, subsequent to the deed of trust or mortgage being foreclosed, against the real property to which the notice of sale applies. The failure to provide the Internal Revenue Service with a copy of the notice of sale pursuant to this paragraph shall be sufficient cause to rescind the trustee's sale and invalidate the trustee's deed, at the option of either the successful bidder at the trustee's sale or the trustee, and in either case with the consent of the beneficiary. Any option to rescind the trustee's sale pursuant to this paragraph shall be exercised prior to any transfer of the property by the successful bidder to a bona fide purchaser for value. A recision of the trustee's sale pursuant to this paragraph may be recorded in a notice of recision pursuant to Section 1058.5.

Section 7425 of the Internal Revenue Code requires notice of a sale to the IRS in accordance with regulations prescribed by the Secretary in writing, by registered or certified mail or by

personal service, not less than 25 days before a sale.  26 U.S.C. § 7425(b) & (c); 26 C.F.R. §

301.7425-2.   Notice shall be given to the District Director for the Internal Revenue District in

which the sale is to be conducted.   26 C.F.R. § 301.7425-3(a).    The Code of Federal

Regulations provide:

> Notice of sale requirements--(1) In general. Except in the case of the sale of perishable goods described in paragraph (c) of this section, a notice (as described in paragraph (d) of this section) of a nonjudicial sale shall be given, in writing by registered or certified mail or by personal service, not less than 25 days prior to the date of sale (determined under the provisions of paragraph (b) of § 301.7425-2), to the district director (marked for the attention of the chief, special procedures staff) for the internal revenue district in which the sale is to be conducted. Thus, under this section, a notice of sale is not effective if it is given to a district director other than the district director for the internal revenue district in which the sale is to be conducted. The provisions of sections 7502 (relating to timely mailing treated as timely filing) and 7503 (relating to time for performance of acts where the last day falls on Saturday, Sunday, or legal holiday) apply in the case of notices required to be made under this paragraph.(a) Notice of sale requirements--(1) In general. Except in the case of the sale of perishable goods described in paragraph (c) of this section, a notice (as described in paragraph (d) of this section) of a nonjudicial sale shall be given, in writing by registered or certified mail or by personal service, not less than 25 days prior to the date of sale (determined under the provisions of paragraph (b) of § 301.7425-2), to the district director (marked for the attention of the chief, special procedures staff) for the internal revenue district in which the sale is to be conducted. Thus, under this section, a notice of sale is not effective if it is given to a district director other than the district director for the internal revenue district in which the sale is to be conducted. The provisions of sections 7502 (relating to timely mailing treated as timely filing) and 7503 (relating to time for performance of acts where the last day falls on Saturday, Sunday, or legal holiday) apply in the case of notices required to be made under this paragraph.
>
> (2) Postponement of scheduled sale--(i) Where notice of sale is given. In the event that notice of a sale is given in accordance with subparagraph (1) of this paragraph (a), with respect to a scheduled sale which is postponed to a later time or date, the seller of the property is required to give notice of the postponement to the district director in the same manner as is required under local law with respect to other secured creditors. For example, assume that in State M local law requires that in the event of a postponement of a scheduled foreclosure sale of real property, an oral announcement of the postponement at the place and time of the scheduled sale constitutes sufficient notice to secured creditors of the postponement. Accordingly, if at the place and time of a scheduled sale in State M an oral announcement of the postponement is made, the Internal Revenue Service is considered to have notice of the postponement for the purpose of this subparagraph.
>
> (ii) Where notice of sale is not given. In the event that--
>
> (A) Notice of a nonjudicial sale would not be required under subparagraph (1) of this paragraph (a), if the sale were held on the originally scheduled date,
>
> (B) Because of a postponement of the scheduled sale, more than 30 days elapse between the originally scheduled date of the sale and the date of the sale, and
>
> (C) A notice of lien with respect to the property to be sold is filed more than 30 days before the date of the sale, notice of the sale is required to be given to the district director in accordance with the provisions of paragraph (a)(1) of this section. In any case in which notice of sale is required to be given with respect to

9

a scheduled sale, and notice of the sale is not given, any postponement of the scheduled sale does not affect the rights of the United States under section 7425(b).
(iii) Examples. . . .

26 C.F.R. § 301.7425-3(a)

The primary issue in the first two causes of action is whether the August 15, 2002 trustee's sale was proper.   Countrywide, CTC, LaSalle, Nevada Trust, and the United States take the position that the sale was invalid because notice of the sale was not given to the IRS at the correct address, as required by 26 U.S.C. § 7425 and Treasury Regulation 301.7425-3(a)(1). Because notice was not properly given, these parties argue that Nevada Trust had the right to rescind the sale pursuant to California Civil Code 2924b(c)(4).   LaJolla and Frasier take the position that the rescission was not valid because (1) the Untied States may have properly been given notice; (2) the defense of laches applies to the rescission; and (3) Section 2924b(c)(4) does not apply in this situation.

**_1.  Notice to the IRS_**

Countrywide's, CTC's, LaSalle's, Nevada Trust's, and the United States's position in their briefs is that the IRS was not given proper notice of the August 15, 2002 sale, allowing Nevada Trust to rescind the sale.   When a defendant challenges the legal sufficiency of a complaint on a Rule 12(b)(6) motion, the court's review is limited to the complaint.   Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir.1993).  As a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion.   Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).

Reviewing only the evidence in the amended counterclaim, the court finds that the IRS was given proper notice of the sale.  The amended counterclaim alleges that the August 15, 2002 foreclosure sale was conducted in full compliance with all applicable California statutes. Alleging the August 15, 2002 sale was conducted in compliance with all California statutes

10

1 would include proper notice to the IRS. Thus, based on the amended counterclaim's allegations,

2 dismissal pursuant to Rule 12(b)(6) is not appropriate.[1]

3       In their motion, Countrywide and CTC request that the court consider evidence outside

4 the amended counterclaim.   Countrywide asks the court to consider evidence of the IRS's correct

5 address for service and the address at which Nevada Trust actually served the IRS.   There are

6 three exceptions to Rule 12(b)(6)'s requirement that extrinsic evidence cannot be considered

7 without converting a motion to dismiss to a motion for summary judgment.   First, a court may

8 consider material that is properly submitted as part of the complaint. Lee, 250 F.3d at 688;

9 Branch, 14 F.3d at 453.   Second, the court may consider documents of which the court may take

10 judicial notice. Lee, 250 F.3d at 689; Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th

11 Cir.1986).   Third, "a district court ruling on a motion to dismiss may consider a document the

12 authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

13 relies." Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir.1998).

14       The court finds that it can consider evidence of the proper address for service to the IRS

15 in this motion to dismiss.   The court may take judicial notice of facts that are capable of accurate

16 and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

17 Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993).   The

18 court finds that the address for the District Director for the Internal Revenue District in which the

19

20       [1]   Countrywide and CTC appear to take the position that the amended counterclaim is
subject to dismissal because it fails to set forth details of how the sale was conducted in
21 compliance with California law.   Rule 8(a) only requires "a short and plain statement of the
claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2). "This simplified
22 notice pleading standard relies on liberal discovery rules and summary judgment motions to
define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v.
23 Sorema N. A., 534 U.S. 506, 512 (2002).  Rule 8 does not require a claimant to set out in detail
the facts upon which he bases his claim, and the defendant only needs to be given fair notice of
24 what the plaintiff's claim is and the grounds upon which it rests. Lee v. City of Los Angeles, 250
F.3d 668, 679 (9th Cir. 2001)  (citing Leatherman v. Tarrant County Narcotics Intelligence and
25 Coordination Unit, 507 U.S. 163, 168 (1993) and Conley v. Gibson, 355 U.S. 41, 47 (1957)).
Given Rule 8's pleading standards, the court finds that the amended counterclaim's allegation
26 that the August 15, 2002 sale was conducted in full compliance with applicable statutes is
sufficient.

27

28                                              11

1    sale was conducted is a fact that is capable of accurate and ready determination.   As such, the

2    court will consider the fact that the correct address for Nevada Trust to send the notice of the sale

3    to pursuant to Treasury Regulation § 301.7425-3(a)(1) was 1301 Clay Street, Oakland, California

4    94612.

5            However, the court finds that it cannot consider the envelope containing the notice of the

6    trustee's sale served upon the IRS, indicating the address at which it was served.   Countrywide

7    and CTC contend that the court can consider as evidence the notice and the address on the

8    envelope as a document the authenticity of which is not contested and upon which the amended

9    counterclaim necessarily relies.  See Parrino, 146 F.3d at 706.  The "incorporation by reference"

10   doctrine permits a court to consider documents on a motion to dismiss "whose contents are

11   alleged in a complaint and whose authenticity no party questions, but which are not physically

12   attached to the [plaintiff's] pleading."  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986

13   (9th Cir.1999) (quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994)).   The Ninth Circuit

14   has extended the "incorporation by reference" doctrine to "situations in which the plaintiff's

15   claim depends on the contents of a document, the defendant attaches the document to its motion

16   to dismiss, and the parties do not dispute the authenticity of the document, even though the

17   plaintiff does not explicitly allege the contents of that document in the complaint."  Knievel v.

18   ESPN,  393 F.3d 1068, 1076 (9th Cir. 2005);  Parrino, 146 F.3d at 706.

19           The problem in this case is that the amended counterclaim does not mention the envelope

20   which contained the notice given to the IRS.  In fact, the amended counterclaim does not mention

21   the notice given to the IRS.   The amended counterclaim only alleges that the August 15, 2002

22   sale was conducted in compliance with California law.  The court cannot find that the amended

23   counterclaim extensively referenced the address on an envelope.   The reference in the amended

24   counterclaim to compliance with California law is insufficient to incorporate the contents of

25   every document which would have made the sale in compliance with California law.   Even if

26   the court were to find the amended counterclaim contains sufficient reference to the envelopes

27

28                                                  12

notices were mailed in, the parties appear to dispute the authenticity of the photocopy of the envelope offered by Countrywide and CTC.   LaJolla and Frazier have not conceded where notice was sent to the IRS.   LaJolla and Frazier imply that notice may have been sent several times because the sale was postponed.    In addition,  LaJolla and Frazier have objected to the evidence offered by Countrywide and Frazier as hearsay.   Thus, the court cannot consider the address that the IRS was served.

Considering the amended counterclaim's allegations and the evidence outside the amended counterclaim that the court can properly consider, the court cannot make a final finding about whether the IRS was given proper notice of the August 15, 2002 sale.  The court cannot consider evidence as to where LaSalle and Nevada Trust sent notice to the IRS regarding the sale. As such, the court cannot find on this motion to dismiss that no claim consistent with the allegations in the amended counterclaim can be proven showing that the notice given to the IRS was proper.   Thus, the court cannot dismiss the complaint pursuant to Rule 12(b)(6) on the ground that LaJolla's and Frazier's first two causes of action fail because the notice to the IRS in connection with the August 15, 2002 sale was improper and the Notice of Rescission was proper. Once the parties conduct discovery, it may be possible to resolve this issue on a motion for summary judgment when the court can consider the parties' evidence on where the IRS was served.

## *2.  Laches*

In their opposition, LaJolla and Frazier also take the position that declaratory relief can still be granted even if notice to the IRS was improper under the theory of laches.   LaJolla and Frazier point out that it was nearly two years after the sale before LaSalle filed the Notice of Rescission.

In general, to demonstrate laches, a party must show both unreasonable delay and prejudice.  Danjaq, LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir.2001).   In considering LaJolla and Frazier's defense of laches, the court's review on this Rule 12(b)(6) motion, as discussed

1  above, is limited to the amended counterclaim and the court may not consider material outside

2  the pleadings.  See Lee, 250 F.3d at 688; Cervantes, 5 F.3d at 1274.   Reviewing the evidence in

3  the amended counterclaim, the court cannot find LaJolla and Frazier have alleged sufficient facts

4  concerning laches.   Liberally reviewing the amended counterclaim, the court finds that LaJolla

5  and Frazier have alleged unreasonable delay in the rescission.   The allegations in the amended

6  counterclaim show that nearly two years passed between the possibly improper notice to the IRS

7  and the trustee's sale and Nevada Trust's filing of the Notice of Rescission.   However, nothing

8  in the amended counterclaim speaks to the issue of prejudice.   The amended counterclaim

9  alleges that LaJolla and Frazier have had use of the Property during the time between the sale and

10  rescission.   The amended counterclaim does not allege how LaJolla and Frazier have been hurt

11  by the delay.   Thus, looking only to the amended counterclaim, the court cannot find the Notice

12  of Rescission invalid based on the doctrine of laches.

13  ### 3.  Authorization to Rescind

14        LaJolla and Frasier also contend in their opposition that even if the IRS was not given

15  proper notice of this sale, Section § 924b(c)(4) does not apply in this situation.   LaJolla and

16  Frasier contend that only certain entities and individuals can request that a sale be rescinded.

17  California Civil Code § 2924b(c)(4) states that: " The failure to provide the Internal Revenue

18  Service with a copy of the notice of sale pursuant to this paragraph shall be sufficient cause to

19  rescind the trustee's sale and invalidate the trustee's deed, at the option of either the successful

20  bidder at the trustee's sale or the trustee, and in either case with the consent of the beneficiary."

21  LaJolla and Frasier argue in their opposition that they did not request the rescission and there was

22  no reason for either Nevada Trust or LaSalle to authorize the rescission.

23        As discussed above, the court's review is limited to the amended counterclaim and the

24  court may not consider material outside the pleadings on this Rule 12(b)(6) motion.  See Lee,

25  250 F.3d at 688; Cervantes, 5 F.3d at 1274.   The amended counterclaim states that

26  Countrywide, Nevada Trust, and LaSalle entered into a settlement agreement which

27

28                                           14

1   contemplated the rescission of the Trustee's Deed Upon Sale for the foreclosure sale conducted

2   on August 15, 2002.   Under the terms of the settlement, LaSalle assigned its promissory note

3   and deed of trust to Countrywide.   Pursuant to the settlement, Nevada Trust executed and caused

4   to recorded the Notice of Rescission, purporting to rescind the Trustee's Deed Upon Sale.

5         Section 2924b(c)(4) allows either the purchaser or trustee to authorize a rescission with

6   the consent of the beneficiary.   Reviewing only the evidence in the amended counterclaim, the

7   court finds the facts in the amended counterclaim are not inconsistent with a finding that Nevada

8   Trust was not authorized by LaSalle to rescind the sale.   The amended counterclaim only alleges

9   that Nevada Trust recorded the notice of rescission pursuant to a settlement between

10  Countrywide, LaSalle, and Nevada Trust.   It is unclear if LaSalle consented to the rescission.

11  Thus, reviewing only the evidence in the amended counterclaim, the court must deny the motion

12  to dismiss on the ground that the rescission was proper pursuant to Section 2924b(c)(4).[2]

13  ### 4.  LaSalle and Nevada Trust

14        LaSalle and Nevada Trust contend that they should be dismissed from the first two causes

15  of action for the additional reason that they no longer have any interest in the Property.

16  The first cause of action requests declaratory relief against Countrywide, the United States, and

17  the Gonzales, finding that LaJolla and Frazier own the property free of any liens by Countrywide

18  and the United States.   The second cause of action requests quiet title.   It is unclear if LaSalle

19  and Nevada Trust are named as Defendants to the second cause of action.   In their opposition,

20  LaJolla and Frazier do not appear to oppose LaSalle and Nevada Trust's request to be dismissed

21  from any claim for quiet title.

22

23        [2]   LaJolla and Frazier also contend that Section 2924b(c)(4) is not applicable to this

24  situation because there was collusion.   LaJolla and Frazier cite no authority for the proposition
    that there is an exception to Section 2924b(c)(4) if there is some improper motive by the trustee

25  and beneficiary when rescinding a sale to which the IRS was not given proper notice.   However,
    because Section 2924b(c)(4) requires both LaSalle and Nevada Trust to consent to the rescission

26  and the amended counterclaim is unclear on whether LaSalle or Countrywide directed Nevada
    Trust to rescind the sale, the court finds it cannot grant the motion to dismiss on the ground that

27  Section 2924b(c)(4) was complied with in this case.

28                                              15

1    While LaSalle and Nevada Trust have filed notices that they claim no interest in the

2  Property, it is unnecessary to consider this evidence, which is not included in the amended

3  counterclaim.   The amended counterclaim does not allege that LaJolla and Frazier have any

4  interest in the Property.   In fact, the amended counterclaim acknowledges that LaSalle has

5  assigned any interest it may have had in the Property to Countrywide.   Under any parties'

6  position, LaSalle and Nevada Trust have no current interest in the Property.   If LaJolla and

7  Frazier are correct and the Notice of Rescission was invalid, LaJolla and Frazier contend they

8  own the Property free and clear of any claim by Countrywide, the United States, the Gonzales,

9  LaSalle and Nevada Trust.   If Countrywide, CTC, LaSalle and Nevada Trust are correct, LaSalle

10  has assigned any interest it might have in the Property to Countrywide and Nevada Trust is no

11  longer the trustee for the Property.   Based on the allegations in the amended counterclaim and

12  the positions of the parties in their briefs, LaSalle and Nevada Trust have no interest in the

13  Property.  Thus, to the extent they are named as Defendants to the second cause of action for

14  quiet title, dismissal is appropriate.

15  **B. Return of Money**

16    Countrywide, CTC, LaSalle, and Nevada Trust request the court dismiss the third and

17  fourth causes of action.  The third cause of action requests the return of money given to

18  Countrywide in the event the court finds LaJolla and Frazier do not own the property.  The fourth

19  cause of action requests the return of money given to LaSalle and Nevada Trust in the event the

20  court finds LaJolla and Frazier do not own the property.   In its motion to dismiss, Countrywide

21  states that it will pay LaJolla and Frazier the sums demanded in the amended counterclaim and

22  the sums LaJolla claims it was entitled to in late November 2003, plus interest.   Countrywide

23  estimates this sum is approximately $64,000.00.  LaSalle and Nevada Trust state that they

24  assigned their interest in the LaSalle Deed of Trust to Countrywide and Countrywide has agreed

25  to pay the $24,000 tendered to LaSalle and Nevada Trust.

26    Countrywide, CTC, LaSalle, and Nevada Trust's contention is that because Countrywide

27

28                                                      16

1   has agreed to return all of the funds tendered by LaJolla and Frazier plus applicable interest,

2   LaJolla and Frazier's causes of action for the return of money should be dismissed.   There are

3   remedies available to Countrywide, CTC, LaSalle, and Nevada Trust if they believe they have

4   offered a fair settlement to LaJolla and Frazier and LaJolla and Frazier refuse to accept their

5   monetary offer.   However, the court is unaware of authority allowing the court to simply dismiss

6   causes of action on the ground that the Defendants state in a motion to dismiss pursuant to Rule

7   12(b)(6) that they are willing to pay the funds in dispute plus interest.   Not only are

8   Countrywide, CTC, LaSalle, and Nevada Trust asking the court to consider allegations of what

9   they will do that are not contained in the amended counterclaim, but there is no authority for

10  dismissal of such claims based on Countrywide's statement in a Rule 12(b)(6) motion that it will

11  pay $64,000.00 to LaJolla and Frazier once they provide Countrywide with a tax identification

12  number.   Thus, the third and fourth causes of action cannot be dismissed at this time.

13  **C. Negligence**

14        Defendants Countrywide and CTC request that the court dismiss the fifth cause of action

15  for relief alleging negligence by Countrywide and CTC when CTC recorded the Notice of Full

16  Reconveyance.   LaJolla and Frazier contend that the court has already addressed whether a

17  negligence claim is available for Countrywide's and CTC's conduct, and the court already found

18  a negligence claim is available.   Defendants Countrywide and CTC contend that the court should

19  take a fresh look at the negligence cause of action based on the recent decision in <u>Residential</u>

20  <u>Capital v. Cal-Setern Reconveyance Corp.</u>, 108 Cal.App.4th 807, 821 (2003).

21        In the court's April 1, 2003 order, the court considered the negligence claim filed by

22  LaJolla and Frazier against Countrywide and CTC.   In denying Countrywide and CTC's motion

23  to dismiss this claim, the court found as follows:

24        ***A. Whether a Negligence Cause of Action is Available***
           "Negligence is conduct which falls below the standard established by law
25      for the protection of others" <u>Bily v. Arthur Young & Co.</u>, 3 Cal.4th 370, 396
        (1992) (quoting Rest.2d Torts, § 282).   "The threshold element of a cause of
26      action for negligence is the existence of a duty to use due care toward an interest
        of another that enjoys legal protection against unintentional invasion." <u>Id.</u> at 397;

27

28                                              17

Adelman v. Associated Int'l Ins. Co., 90 Cal.App.4th 352, 360 (2001).   In
Biakanja v. Irving, 49 Cal.2d 647 (1958), the California Supreme Court created a
checklist of factors to consider in assessing the existence of a legal duty of one
party to another in the absence of privity of contract between them.

> The determination whether in a specific case the defendant will be
> held liable to a third person not in privity is a matter of policy and
> involves the balancing of various factors, among which are [1] the
> extent to which the transaction was intended to affect the plaintiff,
> [2] the foreseeability of harm to him, [3] the degree of certainty
> that the plaintiff suffered injury, [4] the closeness of the connection
> between the defendant's conduct and the injury suffered, [5] the
> moral blame attached to the defendant's conduct, and [6] the policy
> of preventing future harm.

Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1197 (9th Cir. 2001) (citing
Biakanja, 49 Cal.2d at 650).

The Ninth Circuit has found that the recent California Supreme Court case
Bily v. Arthur Young & Co., 3 Cal.4th 370 (1992), arguably limited the
application of the six Biakanja factors.  Glenn K. Jackson Inc., 273 F.3d at 1198.
According to the Ninth Circuit, the California Supreme Court in Bily emphasized
three policy concerns that had to be considered before a duty could be found under
the Biakanja factors: that "(1) liability may in particular cases be out of proportion
to fault; (2) parties should be encouraged to rely on their own ability to protect
themselves through their own prudence, diligence and contracting power; and (3)
the potential adverse impact on the class of defendants upon whom the duty is
imposed."  Glenn K. Jackson Inc., 273 F.3d at 1198 (citing Bily, 3 Cal.4th at
399-405).

> In the business arena it would be unprecedented to impose a duty
> on one actor to operate its business in a manner that would ensure
> the financial success of transactions between third parties. With
> rare exceptions, a business entity has no duty to prevent financial
> loss to others with whom it deals directly. A fortiori, it has no
> greater duty to prevent financial losses to third parties who may be
> affected by its operations.

Quelimane Co., Inc. v. Stewart Title Guaranty Co., 19 Cal.4th 26, 59 (1998).

No party has cited any case specifically discussing whether a title company
who improperly records a document can be liable for negligence against a later
purchaser of the property.  A current property owner has a cause of action against
anyone who improperly records documents affecting the owner's title.  See, e.g.,
Seeley v. Semour, 190 Cal.App.3d 844 (1987); John K DiMugno and Paul E.B.
Glad, California Insurance Law Handbook § 78.09(4) (2002); Margaret Hartley
Healy, 1Cal. Jur. 3d, Abstracters and Title Insurers § 56 (2002).   However, no
case cited by the parties specifically discussed the situation at issue in this action
in which the current owner is attempting to sue for an improper recording that
occurred before the current owner bought the property.   The parties agree that to
determine if such a cause of action is available, the court must apply the six
factors discussed above.  In applying these factors, the parties reach different
conclusions.   Two cases are informative on whether the court should find
Countrywide and CTC can be liable to LaJolla II and Frazier for the mistaken Full
Reconveyance recorded when Robert and Marisela Gonzales owned the Property.

In Stalberg v. Western Title Insurance Co., 27 Cal.App.4th 925 (1994), a
group of landowners filed an action against their title insurer.  Between 1963 and
1974 the defendant drafted and recorded deeds for upstream property owners that

18

included a fictitious 60 foot wide easement across the plaintiffs' properties. Id. at 930-31. When Thomson learned about the easement, the defendant reassured him that there was no such easement over the plaintiffs' properties. Id. at 931. An attorney also traced the plaintiffs' chain of title and found no legal basis for the fictitious easement. Id. The plaintiffs initiated a quiet title action against the upstream property owners. Id. The plaintiffs' attorney then learned that the defendant had recorded the easement, the defendant had probably drafted the easement, and the defendant had not insured "any of [the upstream property owners] as having an easement over the plaintiffs' lands." Id.

The defendant was held liable. The Court of Appeal recognized that the title insurer did not insure the false easement and the causes of action against the title insurer were unrelated to any breach of its obligations under the policy. See id. at 931-932. The primary issue in the litigation was whether a cause of action against the defendant was barred by the limitations period. Id. at 931-32. Nevertheless, the title insurer was successfully sued in tort because it had assisted in preparation and recondition of a false document.

In Seeley v. Seymour, 190 Cal.App.3d 844 (1987), a title company was sued by a third party with which it had no direct dealings for slander of title and negligence concerning its role in the recondition of a nonrecordable document. Safeco Title Insurance Company recorded a purported "Memorandum of Agreement" to lease Seeley's property to Seymour. Id. at 851. However, the Memorandum was improper because it had not been signed by Seeley. Id. The Court of Appeal considered the question of whether a title company, not acting as an escrow agent, may be held liable for the negligent recording of a nonrecordable document. Id. at 856-62. The Court of Appeal concluded that the title insurance company did owe a duty of care to a third party non-insured whose title was affected by the recorded document. Id. at 862.

The Court of Appeal applied the six factors discussed above to determine if Safeco owed Seeley a duty, including: "(1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm." Id. at 860-61. The Court of Appeal found the first factor met. The recording of the Memorandum was substantially intended to affect Seeley because it was its primary purpose. Id. at 861. The Court of Appeal found there was a strong element of foreseeability that Seeley would suffer economic harm as the result of Safeco's recondition of the Memorandum. Id. Once the nonrecordable Memorandum found its way into the official register with its stamp prominently displayed on the Memorandum, it could reasonably be anticipated that Seeley would encounter difficulty in consummating a sale to interested third parties. Id. The Court of Appeal found Seeley did suffer an injury because the recorded Memorandum tied up a prospective sale and resulted in attorney's fees to expunge it from the record. Id. The court found a "closeness of the connection" between the act and the harm suffered self evident. Id. Specifically, the Court of Appeal noted the relationship between Safeco and the County Recorder as well as the circumstances under which the Memorandum was presented, gave the appearance that Safeco had given its imprimatur to the document. Id. The Court of Appeal did find the conduct not morally repugnant, but concluded that Safeco's conduct was deserving of moral blame. Id. at 862. By violating both its contract with the Recorder and standard title company practices, Safeco gave the document an aura of presumptive validity, thereby dramatically increasing the likelihood that the

document would not be scrutinized by the Recorder.  Id.  Finally, the Court of Appeal found the imposition of liability would serve the public interest.  Id. The Court of Appeal determined that the involvement of title companies in the majority of real estate transactions compels a greater degree of accountability to the public and they should be held liable for their negligent acts .  Id. at 862. Thus, the Court of Appeal concluded that Safeco should be held responsible for what was otherwise nothing more than a ministerial act for which it was paid nothing.

Based on the reasoning in Seeley,[3] the court does not find that LaJolla II and Frazier can prove no set of facts to support their negligence claim.  See Hishon, 467 U.S. at 73.  A Rule 12(b)(6) motion to dismiss for failure to state a claim is disfavored, see Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir.1986), and may be granted only in extraordinary circumstances, see Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir.1997).  Applying the six factors to the cross complaint's alleged facts, several of the factors are present for the same reasons as found by the Court of Appeal in Seeley.  For other factors, disputed issues of fact must be resolved before the court can ascertain whether the factor has been met.

The first factor requires the court to consider the extent to which the transaction was intended to benefit LaJolla II and Frazier.  At first glance, it appears this factor does not strongly support a finding of a duty by CTC and Countrywide.  At the time the Full Reconveyance was recorded, LaJolla II and Frazier did not yet own the property.  Unlike in Seeley, the recording was not made primarily to benefit LaJolla II and Frazier.  However, on this motion to dismiss, the court will not find as a matter of law that the recording of the Full Reconveyance had no intended benefit to future purchasers such as LaJolla II and Frazier.  One of the purposes behind California's recording system is to provide notice to persons dealing with real property of others' interests the property.  See California Civil Code § 880.020.  Recording the Full Reconveyance provided notice to all persons concerned with the title to the Property that Countrywide's Deed of Trust was no longer a lien.  It appears such a recording was intended to affect the way future buyers would view the property.  A third party dealing with a subject real property is entitled to rely on documents of record relating to the property.  See Caito v. United California Bank, 20 Cal.3d 694, 702 (1978).  Thus, on the facts currently before the court, the court finds that the improper recording was intended to affect future purchases.  Further, facts outside the cross complaint may bolster or negate this factor.  For example, Countrywide's and CTC's knowledge of the LaSalle Deed of Trust, the potential for default on the LaSalle Deed of Trust, and the possibility of a foreclosure sale may assist the court is addressing this factor.

Whether the improper recording was foreseeable is also dependent on facts that are disputed and/or not contained in the complaint and cross complaint.  In general, it should have been foreseeable that future buyers would rely on the Full Reconveyance.  There is always a potential that property may be sold and buyers

---

[3] Seeley has been cited favorably.  When distinguishing the facts before it from Seeley, the California Court of Appeal stated:

There the title company was held liable for the negligent recording of a nonrecordable document. This was, quite simply, an act of professional malpractice for which the title company was properly held accountable.

Southland Title Corp. v. Superior Court, 231 Cal.App.3d 530, 538 n.6 (1991)

20

will rely on title records.   In addition, disputed facts may show that CTC had some knowledge of a potential sale by LaSalle, making it more foreseeable than the ordinary situation.

The third factor requires the court to look to the degree of certainty that LaJolla II and Frazier suffered injuries.  It is impossible to decide this factor at this time.  The cross complaint alleges LaJolla II and Frazier would not have bought the property if it were not for the improper Full Reconveyance in the title.  In their complaint and motion, Countrywide argues that LaJolla II and Frazier are not naive buyers.  Countrywide alleges LaJolla II and Frazier knew the Full Reconveyance was recorded in error.  Whether LaJolla II and Frazier were aware the Full Reconveyance was a mistake is disputed, making it impossible to determine whether LaJolla II and Frazier suffered injuries.  Further, whether Countrywide even has a lien on the Property is disputed.  If the court founds Countrywide has no interest in the Property, LaJolla II and Frazier's injuries will be far less.

The fourth factor requires the court to review the closeness of the connection between Countrywide's and CTC's conduct and the injuries suffered by LaJolla II and Frazier.   Countrywide maintains the harm suffered by LaJolla II and Frazier was Nevada Title's foreclosure sale.  While the foreclosure sale represents an event that occurred between the improper Full Reconveyance and LaJolla II and Frazier's possible harm, it is not the sale that has caused LaJolla II and Frazier's harm.  The court recognizes that the presence of an intervening act and the year that passed between the Full Reconveyance and the sale may weigh against finding this factor.  However, the primary issue necessary to resolve this factor is LaJolla II's and Frazier's knowledge of a potential interest in the property by Countrywide.  Because this fact is disputed, a motion to dismiss is not appropriate.

The fifth and sixth factors are met for the same reasons as discussed by the Court of Appeal in Seeley.  While not morally repugnant, CTC's conduct deserves moral blame because CTC's recording of the Full Reconveyance gave the appearance of validity.  Liability against CTC for its improper recording will service the public interest.   Because the enterprise of a title company has taken on something of a public character, public policy favors imposition of liability even if Countrywide's conduct was not morally repugnant.  Seeley, 190 Cal.3d at 862.

Countrywide's motion to dismiss is essentially testing LaJolla II's and Frazier's compliance with the liberal requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure in alleging a negligence cross claim.  See 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294-96.  The burden imposed by Rule 8(a)(2) is a minimal one. Rule 8(a)(2) requires parties seeking relief in federal court by way of complaint, counterclaim, cross-claim, or third party complaint, to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2).  It is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have not been met.   See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.1991).  Based on the reasoning in Seeley and the fact Countrywide's motion rests in part on facts different than those alleged by LaJolla II and Frazier in their cross complaint, the court finds Countrywide has not shown the cross complaint's fourth cause of action contains no facts that could prove negligence.  Thus, Countrywide's motion is denied.

**B.  Liability of Countrywide for CTC's Conduct**

If the court finds a negligence cause of action is available, Countrywide

takes the position that it cannot be liable for CTC's conduct because CTC acted contrary to Countrywide's express instructions in recording the Full Reconveyance.   It is unnecessary to address the parties' arguments about whether CTC was acting as Countrywide's agent when CTC recorded the Full Reconveyance and whether Countrywide is liable for the actions of its title company.[4]   On this motion to dismiss, the cross complaint's allegations must be presumed true.  See Hospital Bldg. Co., 425 U.S. at 740.   The cross complaint alleges that CTC is a subsidiary of Countrywide.   As such, Countrywide may be liable for CTC's actions beyond those that a trustor or beneficiary is normally liable for its trustee agent's actions.

In their motion to dismiss, Countrywide and CTC request the court reconsider its prior findings regarding LaJolla's and Frazier's negligence claim in light of Residential Capital v. Cal.-Wester Reconveyance Corp., 108 Cal.App.4th 807, 821 (2003).  In Residential Capital, the bank, through a loan servicing agent, instructed the trustee to record a notice of default and notice of sale.  Id. at 812.   The bank and the debtor reached an agreement that cured the default and reinstated a loan on the eve of the trustee's sale.  Id. at 811-12.   The bank, through the loan servicing agent, sent an e-mail to the trustee the day before the sale telling the trustee that the sale had been postponed.  Id. at 812. However, the trustee did not read the e-mail, and the sale was held.  Id. A third party was the high bidder at the sale.   Id. The trustee learned of the postponement the day after the sale and notified the third party that it had acted without authority in conducting the sale. Id.   The trustee did not issue a trustee's deed, and the trustee returned the third party's unnegotiated checks with interest.  Id.   The third party then sued the bank and the trustee for breach of contract, breach of the implied covenant, negligence and negligent misrepresentation.  Id.   On cross-motions for summary judgment, the trial court agreed with the trustee and the bank that the trustee's lack of authority to conduct the sale due to the postponement agreement rendered the sale void.   Id. at 812-813.   On appeal, the California

---

[4]  An agency relationship between Countrywide and CTC clearly existed.  The trustee of a deed of trust is not a true trustee and owes no fiduciary obligations. He or she merely acts as a common agent for the trustor and the beneficiary of a deed of trust. The trustee's only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust or (2) upon satisfaction of the secured debt to reconvey the deed of trust. Vournas v. Fidelity Nat. Tit. Ins. Co., 73 Cal.App.4th 668, 677 (1999); Hatch v. Collins, 225 Cal.App.3d 1104, 1111-1112 (1990) As an agent, the trustee under a deed of trust may be liable for negligence to the principal. Kerivan v. Title Ins. & Trust Co., 147 Cal.App.3d 225, 229 (1983).

1   Court of Appeal concluded that the trustee's violation of its statutory duty to postpone the sale

2   pursuant to the postponement agreement invalidated the sale, and the third party was not entitled

3   to recover additional damages from the trustee or the bank. Id. at 822-23.

4       Of primary importance to the cause of action before this court, is the California Court of

5   Appeals' discussion of the third party's negligence cause of action.   The third party sued both

6   the trustee and the bank for negligence. Residential Capital, 108 Cal.App.4th at 812.   The

7   Court of Appeal found that a foreclosing trustee has a duty to ensure that a trustee's sale is fairly

8   conducted. Id. at 826.   The Court of Appeal stated that a trustee's duty runs both to the

9   beneficiary and the trustor, and the Court of Appeal opined that a trustee's duty to an

10  unsuccessful bidder would only apply if there were a valid foreclosure sale in which the

11  unsuccessful bidder was entitled to participate but was unfairly prevented from doing so. Id. at

12  825-26.   After reviewing case law concerning actions against trustees, the Court of Appeal stated

13  there was no reason to create new, nonstatutory duties for trustees at trustee sales. Id. at 827.

14  The Court of Appeals concluded:

15      The only rights for the unsuccessful high bidder at a mandatorily postponed sale
        are the return of the consideration paid plus interest. (Little, supra, 188
16      Cal.App.3d at pp. 1361-1362.) No negligence cause of action need be recognized
        here. Otherwise, we would be engaging in judicial legislation by grafting a tort
17      remedy onto a comprehensive statutory scheme in the absence of a compelling
        justification for doing so. (§§ 2924-2924k.)

18

19  Id.

20      At this time, the court does not find that the California Court of Appeal's holding in

21  Residential Capital precludes a negligence action against a party who negligently records a notice

22  of full reconveyance.  In Residential Capital, the Court of Appeal addressed the duty owed by the

23  trustee to bidders at a trustee sale.   The Court of Appeal did not directly address the duty of a

24  bank or loan servicing agent.   The Court of Appeal found that the duty of the bank at a trustee's

25  sale would be the same as the duty of a trustee because of the agency relationship between the

26  bank and the trustee. Residential Capital, 108 Cal.App. at 825.  Here, the alleged negligent act

27

28                                          23

1    occurred a year before the sale, when the Notice of Full Reconveyance was filed.   Because the

2    Notice was not filed in connection with the sale, the court cannot presume Countrywide and

3    CTC's duty would be the same as a trustee at a trust sale.   The duty LaJolla and Frazier allege

4    Countrywide owed is not based on the duties of a trustee at a sale.

5          Also, as noted by the Magistrate Judge, this action is distinguishable from Residential

6    Capital because nearly two years after LaJolla and Frazier bought the Property and the Trustee's

7    Deed was filed, Nevada Trust recorded the notice of rescission.   In Residential Capital, the

8    trustee's deed did not issue and the trustee returned the plaintiff's checks within a few days.   It

9    appears there may be a distinction on whether a trustee's deed has been issued and the property is

10   owned by a bona fide purchaser.   See Residential Capital, 108 Cal.App.4th at 823-24 & n.5.

11         The court recognizes that whether LaJolla and Frazier's negligence cause of action is

12   viable requires the court to address an area of California law that would be best left to the

13   California courts.   Because the law on the duties owed when recording documents is evolving,

14   Countrywide and Frazier have leave to raise this issue in future proceedings once evidence

15   supporting Plaintiffs' theory of relief is provided[5] and as further case law is announced.

16   //

17   //

18   //

19   //

20

21                                    **ORDER**

22         Accordingly, for the reasons stated in the above memorandum opinion, the court

23

24   _____

25         [5] To the extent LaJolla and Frazier contend that CTC was obligated to confirm that the
     Gonzales had repaid the note before reconveying the deed of trust, and that CTC breached an

26   obligation because it reconveyed the deed of trust without confirming the note was not paid,
     Countrywide and CTC are correct that CTC owed no such duty.   See Vournas v. Fidelity Nat.
     Title Ins. Co., 73 Cal.App.4th 668, 677 (1999).   However, it appears LaJolla and Frazier's theory

27   is that CTC recorded the notice of full reconveyance knowing the note had not been paid.

28                                        24

ORDERS that:

1.   Countrywide and CTC's motion to dismiss is DENIED;

2.   LaSalle and Nevada Trust's motion to dismiss is DENIED in part and GRANTED in part;

3.   LaSalle and Nevada Trust are DISMISSED from all causes of action other than the fourth cause of action for the return of funds; and

4.   Countrywide, CTC, LaSalle, and Nevada Trust are DIRECTED to file responsive pleadings withing thirty days of this order's date of service.


IT IS SO ORDERED.

**Dated:   April 29, 2005**                        **/s/ Anthony W. Ishii**
9h0d30                                      UNITED STATES DISTRICT JUDGE

25