1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

7   COUNTRYWIDE HOME LOANS, INC. )   CV F 02  6405 AWI SMS
    a New York Corporation,       )
8                                  )   MEMORANDUM OPINION AND
              Plaintiff,           )   ORDER REGARDING MOTIONS
9                                  )   FOR SUMMARY JUDGMENT
         v.                        )
10                                 )   (Documents #233, #234, #237, #238,
    UNITED STATES OF AMERICA,      )   #245, & #246)
11   acting through the Internal Revenue )
    Service; LA JOLLA GROUP II, an )
11  entity form unknown; TERRANCE  )
    FRAZIER, individually and dba La Jolla )
12  Group II; NEVADA TRUST DEED    )
    SERVICES INC., a Nevada Corporation; )
13  LA SALLE NATIONAL BANK, as     )
    TRUSTEE FOR AVONDALE HOME      )
14  EQUITY LOAN TRUST 1998-1, an   )
    entity form unknown; ROBERT G. )
15  GONZALES, an individual; MARISELA )
    GONZALES, an individual; ALL   )
16  PERSONS KNOWN AND UNKNOWN      )
    CLAIMING A RIGHT, TITLE OR     )
17  INTEREST IN OR TO THE REAL     )
    PROPERTY COMMONLY KNOWN        )
18  AS 765 EAST WOODHAVEN LANE,    )
    FRESNO, CALIFORNIA,            )
19                                 )
20            Defendants.          )
    _____ )
21                                 )
    and related cross and counter claims. )
22                                 )
    _____ )

23

24                          **BACKGROUND**

25       This action concerns title to property commonly known as 765 East Woodhaven Lane,

26  Fresno ("the Property").  The prior owners, Robert G. Gonzales and Marisela Gonzales ("the

27  Gonzales"), had two deeds of trust on the Property.  The first or senior lien was with

28  Countrywide Home Loans, Inc. ("Countrywide").  The second or junior lien was with LaSalle

National Bank ("LaSalle).   The United States also had placed a tax lien on the Property.   CTC

Real Estate Services ("CTC") acted as trustee for the Countrywide loan.    CTC  filed a full

reconveyance of Countrywide's loan, and LaSalle then foreclosed on the Property using Nevada

Trust Deed Services Inc. ("Nevada Trust") as its title company.   At the foreclosure sale

conducted on August 15, 2002, the Property was sold to LaJolla Group II ("LaJolla") and

Terrance Frazier ("Frazier").    The original issues presented in the complaint and counterclaims

concerned the legality of the sale, what liens remained on the property, and the priority of the

remaining liens.  However, on June 24, 2004, Nevada Trust filed a notice of rescission of the

trustee's deed of sale conducted on August 15, 2002.

On June 29, 2004, Countrywide filed a motion to dismiss the complaint without prejudice

pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure and requested that the court

decline to exercise supplemental jurisdiction over the cross complaint filed by LaJolla and

Frazier.   On August 2, 2004, LaJolla and Frazier filed an opposition to the motion to dismiss.

LaJolla and Frazier contended that they should be allowed to proceed on their counterclaims and

cross claims because they believe the August 15, 2002 sale was lawful and the June 24, 2004

rescission was unlawful.  On October 12, 2004, the court granted Countrywide's motion to

dismiss the complaint.  However, the court stated it would continue to exercise supplemental

jurisdiction over the counterclaim for thirty days to allow LaJolla and Frazier to file an amended

counterclaim and cross complaint that provided a basis for the court's jurisdiction.

On November 12, 2004, LaJolla and Frazier (Counter-claimants) filed a motion for leave

to file an amended counterclaim and cross-claim ("amended counterclaim).  On December 23,

2004, the Magistrate Judge granted Counter-claimants's motion. On January 5, 2005, Counter-

claimants filed their amended counterclaim.  The first cause of action requests declaratory relief

against Countrywide, the United States, and the Gonzales, finding that Counter-claimants own

the property free of any liens by Countrywide and the United States.   The second cause of action

requests quiet title.   The third cause of action requests the return of money given to Countrywide

2

1  in the event the court finds Counter-claimants do not own the property.   The fourth cause of

2  action requests the return of money given to LaSalle and Nevada Trust.   The fifth cause of action

3  alleges negligence by Countrywide and CTC in recording the full reconveyance.

4          On February 16, 2005, LaSalle and Nevada Trust filed a motion to dismiss pursuant to

5  Rule 12(b)(6) of the Federal Rules of Civil Procedure.   On April 29, 2006, the court denied the

6  motion to dismiss.    The court found it could not find the IRS was not given proper notice on a

7  motion to dismiss because the court could not consider necessary evidence outside the record.

8  The court found that based on the complaint's allegations, the court could not find Nevada

9  Trust's rescinding of the sale was authorized under California law.   The court also found that

10  Countrywide's offer to return to Counter-claimants the sum they had purchased the property for

11  did not moot Counter-claimants' claims.   Finally, while noting it was a close issue, the court

12  declined to dismiss the negligence claims.   The court granted LaSalle and Nevada Trust's motion

13  to dismiss in part and dismissed LaSalle and Nevada Trust from all causes of action other than

14  the fourth cause of action for the return of funds.    The court dismissed LaSalle and Nevada

15  Trust because they no longer have an interest in the Property.

16          On June 6, 2006, the United States filed a motion for summary judgment.   The United

17  States contends that Nevada Trust failed to give proper notice of the foreclosure sale on the

18  property to the IRS.    The United States requests summary judgment finding that the preexisting

19  federal tax liens were not discharged by the sale and they continue to encumber the Property.

20  On August 14, 2006, Counter-claimants filed an opposition to the Untied States' motion.

21  Counter-claimants concede that the Property is subject to any liens filed by the United States

22  before the trustee's sale.

23          On June 26, 2006, Counter-claimants filed a motion for summary judgment.    Counter-

24  claimants contend that they are bona fide purchasers as a matter of law.    Counter-claimants

25  contend that the trustee's sale cannot be set aside because California Civil Code § 2924b(c)(4),

26  which allows a trustee sale to be rescinded if the IRS is not given proper notice, was not in the

27

28                                                  3

law at the time of the sale.  On August 2, 2006, Counter-defendants filed an opposition to
Counter-claimants' motion.  On August 21, 2006, Counter-claimants filed a reply.

On June 26, 2006, Countrywide, CTC, LaSalle, and Nevada Trust ("Counter-defendants")
filed a motion for summary judgment.    Counter-defendants contend that Counter-claimants are
not bona fide purchasers.    Counter-defendants contend that the failure to give notice to the IRS
was grounds for the rescission of the trustee sale.    CTC and Nevada Trust also contend that they
have a statutory privilege against any negligence claim.    CTC contends it cannot be liable for
negligence because it had no duty of care.      On August 14, 2006, Counter-claimants filed an
opposition to Counter-defendants' motion.   On August 21, 2006, Counter-defendants filed a
reply.

**FACTS**[1]

The real property, which is the subject of this action, is generally described as 765
E.Woodhaven Lane, Fresno, California, and is legally described as Lot 14 of Tract No. 3374,
Mount Vernon Place No. 1, in the City of Fresno, County of Fresno, State of California,
according to the Map recorded August 24, 1984, in Book 41 at Pages 97 to 100 Inclusive, of
Maps, Fresno County Records (the "Property").   The property was owned by Robert Gonzales
and Marisela Gonzales, husband and wife, as joint tenants.

A deed of trust executed by Robert G. Gonzales and Marisela Gonzales ("the
Gonzaleses") as trustors in favor of Victoria Mortgage Company was recorded on February 9,
1994 as Document No. 94021990 in Official Records of the Fresno County Recorder,
encumbering the Property (the "CHL Deed of Trust").

The beneficial interest under the CHL Deed of Trust was assigned to Countrywide by an
Assignment recorded on July 14, 1994 as Document No. 94112148 and thereafter Countrywide
became the servicer of the loan.

---

[1]   These facts have been combined from the parties' submitted statements of undisputed
facts and the parties' responses.

When the CHL Deed of Trust was assigned to Countrywide   CTC Real Estate Services, Inc. ("CTC"), formerly known as CTC Foreclosure Services and as Countrywide Title Corporation, became the trustee under the CHL Deed of Trust.

A deed of trust executed by the Gonzaleses as trustors in favor of Avondale Federal Savings Bank against the Property in the amount of $18,900.00 was recorded on February 25, 1998, as document number 98026346 in the Official Records of the Fresno County Recorder ("the LaSalle Deed of Trust").

On November 23, 1998, the United States made federal income tax assessments against Robert Gonzales for the calendar year 1997 in the amounts of $3,085 in tax, $269.40 in penalties and $128.88 in interest.   On May 31, 1999, the United States made federal income tax assessments against Robert Gonzales for the calendar year 1998 in the amounts of $7,680 in tax, $231.80 in penalties and $77.81 in interest.   On May 29, 2000, the United States made federal income tax assessments against Robert Gonzales for the calendar year 1999 in the amounts of $8,278 in tax, $479.78 in penalties and $90.04 in interest.

On August 18, 2000, the United States filed a Notice of Federal Tax Lien with the Fresno County Recorder's Office with respect to the income tax assessments against Robert Gonzales for the years 1997, 1998 and 1999.

After the Gonzaleses' defaulted on the Countrywide loan, a non-judicial foreclosure under the CHL Deed of Trust was initiated when CTC caused a Notice of Default and Election to Sell to be recorded on April 9, 2001, as Document No. 2001-0047487("CHL NOD I").

After expiration of the statutory three month period, CTC caused a Notice of Trustee's Sale to be recorded on July 13, 2001, as Document No. 2001-0097583 ("CHL NOS I").

The Gonzales' then cured the default under the Countrywide loan.

A full reconveyance of the CHL Deed of Trust was recorded on August 3, 2001, as document number 2001-0110133 in the official records of Fresno County.  The parties dispute whether Countrywide instructed CTC to only rescind the CHL NOD I or file a Full

1   Reconveyance of the Countrywide Deed of Trust.   The parties dispute whether CTC acted

2   pursuant to Countrywide's instructions or whether CTC was mistaken when it issued the Full

3   Reconveyance.

4        After default on the La Salle loan, non-judicial foreclosure under the La Salle Trust Deed

5   was initiated when Nevada Trust caused a Notice of Default and Election to Sale Under Deed of

6   Trust to be recorded on November 21, 2001 as Document No. 01-0171086.

7        After the Countrywide loan went into default again, a new non-judicial foreclosure under

8   the CHL Deed of Trust was initiated ("CHL NOD II"). A notice of default giving notice of a

9   default under the Countrywide Deed of Trust was recorded on January 4, 2002, as Document No.

10   2002-0001952, in the Official Records of Fresno County.

11        After expiration of the statutory three month period, Nevada Trust caused a Notice of

12   Trustee's Sale to be recorded on February 28, 2002 as Document No. 2002-0031880.   This

13   Notice of Trustee's Sale initially scheduled a trustee's sale date of March 15, 2002.

14        One of the parties entitled to receive notice of the foreclosure sale was the IRS, which had

15   recorded a Notice of Federal Tax Lien against the Gonzales' on August 18, 2000 as Document

16   No: 2000-0099536.

17        On February 20, 2002, Nevada Trust first provided the IRS with written notice of

18   the pending sale of the Property.   By certified mail, return receipt requested, on February

19   20, 2002, Nevada Trust sent a copy of the Notice of Trustee's Sale to the IRS addressed to 5104

20   N. Blythe Street, Suite 102 (Stop FR 5530), Fresno, California 93722.   Based upon the delivery

21   information contained on the return receipt, the IRS received the Notice of Trustee's Sale on

22   February 25, 2002.   The notice provided on February 20, 2002, was the only written notice

23   provided by Nevada Trust to the IRS with respect to the trustee's sale of the Property.   Nevada

24   Trust mailed notice of its trustee sale, along with appropriate documents, to the IRS in an

25   untimely fashion.   The IRS received only 23 day notice of the Nevada Trust foreclosure sale.

26   No additional notice was provided to the IRS of the foreclosure sale.

27

28                                                    6

1    All parties who contacted Nevada Trust regarding the foreclosure sale were advised that

2    the CHL Deed of Trust still remained a valid lien against the Property.[2]   There is no evidence

3    Counter-claimants spoke to anyone at Nevada Trust about the CHL Deed of Trust or any

4    potential error concerning the CHL Deed of Trust.

5    Neither Countrywide nor CTC will provide information to third parties regarding the

6    status of a customer's loan.

7    The March 15, 2002 scheduled trustee's sale under the LaSalle Deed of Trust was

8    postponed as a result of the bankruptcy filing by Robert G. Gonzales.   On March 15, 2002,

9    Robert G. Gonzales filed a petition in the United States Bankruptcy Court, Eastern District of

10   California (Fresno), Case No. 02-12384.   The bankruptcy of Robert G. Gonzales was dismissed

11   on April 25, 2002.   Robert G. Gonzales filed a second petition on April 26, 2002 in the United

12   States Bankruptcy Court, Eastern District of California ( Fresno), Case No. 02-13889.

13   Countrywide filed a motion for relief from the automatic stay in the bankruptcy case and

14   obtained relief from the Automatic Stay in Case No. 02-13889.

15   Due to the filing of the Chapter 13 bankruptcy proceedings by Robert Gonzales, Nevada

16   Trust continued the trustee's sale of the Property on several occasions.

17   Robert Gonzales' second bankruptcy was dismissed on August 1, 2002.

18   The trustee's sale under the La Salle Trust Deed was conducted on August 15, 2002, and

19   La Jolla Group II and Terrance Frazier ("collectively "LJG II") submitted the successful bid of

20   $24,200.00.

21   The Trustee's Deed Upon Sale for the trustee's sale conducted by Nevada Trust on

22   August 15, 2002, was recorded on August 27, 2002 as Document No. 2002-0145898.   The

23   Trustee's Deed Upon Sale issued in favor of LJG II contained the statutory recitals provided for

24

25        [2] Counter-claimants' dispute to this proposed fact is overruled.   While Counter-
26   claimants are correct that Mr. Gagnier admitted that he had no actual knowledge about whether
     the reconveyance was recorded in error and no Counter-claimant ever called, this additional
27   evidence does not dispute that anyone who did contact Nevada Trust was told there was an error.

28                                                    7

in California Civil Code § 2924.

The parties dispute whether LJG II purchased the property in good faith and for value.

LJG II relied on the existence of the Countrywide reconveyance when bidding on the property at the foreclosure sale.   LJG II did not have specific knowledge that the reconveyance was recorded in error.

At the time that LJG II participated at the foreclosure sale it was aware that Countrywide had recorded the CHL NOD II on January 4, 2002.

LJG II did not make any effort to contact Countrywide or CTC to discuss the CHL NOD II because Mr. Boyajian knew that he would be unable to obtain information about a loan from the lender or trustee.   In fact, it was Countrywide's policy not to give out such information.[3]

After expiration of the statutory three month period and receiving relief from Robert Gonzales' Automatic Stay in Bankruptcy Case No. 02-13889, CTC caused a second Notice of Trustee's Sale to be recorded on September 3, 2002 as Document No. 2002-0150872, setting the trustee's sale date of September 19, 2002 ("CHL NOS II").

LJG II paid Countrywide the sum of $22,721.22 to prevent Countrywide from proceeding with the foreclosure sale on September 19, 2002.   Both LaJolla Group and Frazier communicated with Countrywide in writing and by telephone in an attempt to obtain a return of their funds and have Countrywide recognize the validity of the Countrywide full reconveyance.

On September 24, 2002, Countrywide instructed CTC to rescind the CHL NOD II and CTC rescinded CHL NOD II as Document No. 2002-0166168.

On October 15, 2002, CTC recorded a document entitled "Notice of Void Reconveyance," as Document No. 2002-081482 in the official records of Fresno County.

On or about June 24, 2004, Nevada Trust caused a "Notice of Rescission of Trustee's Deed Upon Sale" to be recorded as Document No. 2004-0139117 (the "Rescission").

---

[3]  While Counter-claimants claim to dispute these proposed facts, Counter-claimants merely offer additional information, which has been added to the statement of undisputed facts.

In November 2003, Countrywide attempted to return and refund the amount of LJG II's foreclosure bid plus interest.   LJG II refused to provide the tax identification information so that the money could be returned.   LJG II did so because it considered acceptance of this money to be prejudicial to its position in this action.[4]

La Jolla Group II is a general partnership consisting of Alan Boyajian and Lee Kleim.

Both Frazier and La Jolla Group II were extremely experienced purchasers of foreclosure properties in Fresno County, California.

On August 15, 2002, the date of the submission of their bid at the Nevada Trust's sale, both Frazier and Boyajian believed that the value of the Property exceeded $225,000.00. Boyajian testified that they believed it had this value once the property was "finished out", including paint, carpet, and a new roof.

Boyajian and Frazier both personally attended the sale.   Prior to bidding, Frazier requested and Boyajian agreed to join forces, so that Boyajian would bid on behalf of both.

Boyajian knew about the Notice of Default recorded by Countrywide on January 4, 2002, as Document No. 02-0001952, when he bid at the Nevada Trust foreclosure sale on August 15, 2002.

Boyajian knew that a mistake had been made by Countrywide at the time that he bid at the Nevada Trust foreclosure sale on August 15, 2002 because Countrywide had filed a notice of reconveyance and then a notice of default.   Boyajian believed that the notice of default and not the full reconveyance was recorded in error.   At his deposition, Boyajian testified "There's obviously a mistake.  Am I supposed to determine what the mistake is?"   See Boyajian Depo. at 103.   Boyajian testified that he has seen lots of erroneous notices of default and sales, but never

---

[4] Counter-claimants again dispute this fact.  However, Counter-claimants offer no evidence to dispute the proposed fact; they only offer additional information and evidence. These additional facts have been added.

1    an erroneous reconveyance.  See id. at 96, 103.[5]

2        Boyajian was "ecstatic" and jumped up and down when he acquired title to the property

3    for $24,200.00.

4                                        **LEGAL STANDARD**

5        Summary judgment is appropriate when it is demonstrated that there exists no genuine

6    issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

7    Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v.

8    Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710

9    (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th

10   Cir. 1984).  Under summary judgment practice, the moving party

11               [A]lways bears the initial responsibility of informing the district
                 court of the basis for its motion, and identifying those portions of
12               "the pleadings, depositions, answers to interrogatories, and
                 admissions on file, together with the affidavits, if any," which it
13               believes demonstrate the absence of a genuine issue of material
                 fact.
14

15   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

16        "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue,

17   a summary judgment motion may properly be made in reliance solely on the 'pleadings,

18   depositions, answers to interrogatories, and admissions on file.'"  Id.  "[A] complete failure of

19   proof concerning an essential element of the nonmoving party's case necessarily renders all other

20   facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

21   whatever is before the district court demonstrates that the standard for entry of summary

22   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

23        When the moving party has the burden of proof at trial, that party must carry its initial

24   ─────────────────

25        [5] Plaintiffs also submit as an undisputed fact that Boyajian decided to bid at the Nevada
     Trust trustee's sale knowing that there would be an issue about the title later.  The court finds the
26   proposed fact is not supported by Boyajian's deposition testimony.  In the cited testimony,
     Boyajian is merely describing potential problems with property.  The only possible title issue
27   Boyajian seems to specifically address as to the Nevada Trust trustee's sale is the potential for a
     tax lien.

28                                              10

burden at summary judgment by presenting evidence affirmatively showing, for all essential

elements of its case, that no reasonable jury could find for the non-moving party. United States v.

Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc); Calderone v.

United States, 799 F.2d 254, 259 (6th Cir. 1986); see also E.E.O.C. v. Union Independiente De La

Autoridad De Acueductos Y Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002)

(stating that if "party moving for summary judgment bears the burden of proof on an issue, he

cannot prevail unless the evidence that he provides on that issue is conclusive.")

       If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities

Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280

(9th Cir. 1979).

       In attempting to establish the existence of this factual dispute, the opposing party may not

rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of

specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank,

391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must

demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433,

1436 (9th Cir. 1987).

       In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

1  trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose

2  of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether

3  there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)

4  advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin

5  Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

6      In resolving the summary judgment motion, the court examines the pleadings,

7  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

8  any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th

9  Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and

10  all reasonable inferences that may be drawn from the facts placed before the court must be drawn

11  in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,

12  369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th

13  Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

14  obligation to produce a factual predicate from which the inference may be drawn.  Richards v.

15  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

16  Cir. 1987).

17                **DISCUSSION**

18      A deed of trust is a lien on real property.  Monterey S.P. Partnership v. W.L. Bangham,

19  Inc., 49 Cal.3d 454, 460  (1989).   Reconveyance of a deed of trust transfers the security interest

20  to the current owner of the property.    On recording, the lien is extinguished.  California Civ.

21  Code §§ 2939, 2941(b)(1); First Fidelity Thrift & Loan Assn. v. Alliance Bank, 60 Cal.App.4th

22  1433, 1441  (1998).

23      Cancellation, pursuant to California Civil Code§ 3412 et seq., is the appropriate remedy

24  to clear a cloud on title that is evidenced by an allegedly invalid written instrument (e.g., a

25  contract, deed or lease).  RUTTER, CAL. PRACTICE GUIDE: REAL PROP. TRANSACTIONS CH. 11-H,

26  H. Other Remedies (2006).  A court-ordered cancellation is authorized only if the document in

27

28                12

1  issue is void or voidable.  California Civil Code § 3412.

2

3  **A. Countrywide's Equitable Interest and Whether Counter-claimants are Bona Fide**

4  **Purchasers**

5          California law has long held that a reconveyance recorded by a trustee by mistake can be

6  set aside by a court of equity in the absence of a bona fide purchaser or encumbrancer.  Conlan v.

7  Sullivan, 110 Cal. 624, 626-27 (1895); First Fidelity Thrift & Loan Ass'n v. Alliance Bank, 60

8  Cal. App. 4th 1433, 1441 (1998); Ankoanda v. Walker-Smith, 44 Cal. App. 4th 610, 615 (1996);

9  First Nationwide Savings v. Perry, 11 Cal. App.4th 1657, 1669 (1992); Vilkin v. Sommer, 260

10  Cal.App. 2d 687, 694 (1968); Simmons v. Briggs, 69 Cal. App. 447, 448 (1924);  MILLER AND

11  STARR CALIFORNIA REAL ESTATE § 10:116, Effect of an erroneous reconveyance (2006).

12  If a trustee executes an unauthorized reconveyance and the trustee subsequently conveys the

13  property, a bona fide purchaser who does not have notice of the trustee's lack of authority

14  receives title free and clear of the lien.  CALIFORNIA REAL ESTATE 2D DIGEST DEEDS OF TRUST §

15  22 Reconveyance (2006).   For example, where a forgery on a request for reconveyance induces a

16  trustee to issue a full reconveyance, the request is void. But if the trustee then issues the

17  reconveyance, it is only voidable (not void), and the reconveyance can be relied upon by a

18  subsequent, bona fide purchaser.  MILLER AND STARR CALIFORNIA REAL ESTATE § 10:71

19  Payment or performance of the secured obligation (2006).   Thus, when a lien is reconveyed by

20  mistake, a subsequent bona fide encumbrancer has priority.  Such a bona fide purchaser or

21  encumbrancer can rely on the public records and receives title free and clear of the equitable lien

22  if he or she does not have knowledge or notice that the trustee was not authorized to make the

23  reconveyance.  Firato v. Tuttle, 48 Cal. 2d 136 (1957); March v. Pantaleo, 4 Cal. 2d 242, 243-44

24  (1935); First Fidelity Thrift & Loan Ass'n v. Alliance Bank, 60 Cal. App. 4th 1433, 1441-42

25  (1998); Huckell v. Matranga, 99 Cal. App. 3d 471, 478 (1979).  If a trustee executes an

26  unauthorized reconveyance and the trustor subsequently conveys the property, a grantee who

27

28                                              13

1   does not have notice of the trustee's lack of authority receives title free and clear of the lien.

2   Firato v. Tuttle, 48 Cal.2d 136, 139  (1957); Triple A Management Co., Inc. v. Frisone, 69

3   Cal.App.4th 520, 530 (1999).   A bona fide purchaser for value is simply not subject to a prior

4   equitable lien.  First Fidelity Thrift & Loan Assn. v. Alliance Bank, 60 Cal.App.4th 1433, 1442

5   (1998).[6]

6          The parties agree that it is "black-letter law" that a bona fide purchaser for value who

7   acquires his or her interest in real property without knowledge or notice of another's prior rights

8   or interest in the property takes the property free of such unknown interests; On the other hand,

9   Counter-claimants admit that it is an equally well-established principle of law that any purchaser

10  of real property acquires the property subject to prior interests of which he or she has actual or

11  constructive notice.   Stout v. Gill, 110 Cal.App. 445, 449  (1930); In re Marriage of Cloney,  91

12  Cal.App.4th 429, 437 (2001); Hochstein v. Romero, 219 Cal.App.3d 447, 451-52  (1990).

13  California Civil Code § 2924 creates a conclusive presumption in favor of a bona fide purchaser

14  who receives a trustee's deed that contains a recital that the trustee has fulfilled its statutory

15  ─────────────

16      [6]      California Probate Code § 18100 also gives third party purchasers of trust
      property protected bona fide status except when they have actual knowledge of a breach.
17  Schiavon v. Arnaudo Brothers, 84 Cal.App.4th 374 (2000).   Probate Code § 18100 provides:
              With respect to a third person dealing with a trustee or assisting a trustee in the
18            conduct of a transaction, if the third person acts in good faith and for a valuable
              consideration and without actual knowledge that the trustee is exceeding the
19            trustee's powers or improperly exercising them:
                  (a) The third person is not bound to inquire whether the trustee has power
20                to act or is properly exercising a power and may assume without inquiry
                  the existence of a trust power and its proper exercise.
21                (b) The third person is fully protected in dealing with or assisting the
                  trustee just as if the trustee has and is properly exercising the power the
22                trustee purports to exercise.
    Cal. Prob. Code § 18100.    In Schiavon v. Arnaudo Brothers, 84 Cal.App.4th 374 (2000), the
23  trustee relied on a forged request for reconveyance.  The trustee executed the reconveyance with
    full awareness of the effect of his act, although without knowledge of the underlying forgery. The
24  reconveyance was therefore not void, but rather voidable, and the subsequent bona fide purchaser
    of the property was entitled to rely on it.   Schiavon v. Arnaudo Brothers, 84 Cal.App.4th 374;
25  MILLER AND STARR CALIFORNIA REAL ESTATE § 11:69 (2006).  If a reconveyance is void, it has
    no effect even against a subsequent bona fide purchaser.  However, if a reconveyance is only
26  voidable, it may have been subject to cancellation and rescission as against the trustee, but could
    be relied upon by a subsequent bona fide purchaser for value.  Schiavon, 84 Cal.App.4th 374
27  (2000).

28                                              14

1   notice requirements. Melendrez v. D & I Investment, Inc., 127 Cal.App.4th 1238, 1250 (2005).

2   Section 2924 reads in relevant part: "A recital in the deed executed pursuant to the power of sale

3   of compliance with all requirements of law regarding the mailing of copies of notices or the

4   publication of a copy of the notice of default or the personal delivery of the copy of the notice of

5   default or the posting of copies of the notice of sale or the publication of a copy thereof shall

6   constitute prima facie evidence of compliance with these requirements and conclusive evidence

7   thereof in favor of bona fide purchasers and encumbrancers for value and without notice."

8        Here, the parties agree that if Counter-claimants were bona fide purchases, who had no

9   actual or constructive notice of the mistake in recording the full reconveyance, Counter-claimants

10  took title free and clear of Countrywide's equitable interest in the property.   However, if

11  Counter-claimants were not bona fide purchases, Countrywide may maintain an equitable interest

12  in the property.  Counter-claimants request summary adjudication finding that they are bona fide

13  purchasers as a matter of law.   Counter-defendants request summary adjudication finding that

14  Counter-claimants are not bona fide purchasers.  Whether Counter-claimants were bona fide

15  purchases is not an issue that is ordinarily resolved on summary judgment.   Whether a buyer is a

16  bona fide purchaser is a question of fact.  Melendrez v. D & I Investment, Inc., 127 Cal.App.4th

17  1238, 1254 (2005); Asisten v. Underwood, 183 Cal.App.2d 304, 311 (1960).

18       Because Countrywide claims an equitable interest rather than an interest based on legal

19  title, it has the burden to establish that Counter-claimants were not bona fide purchases and were

20  on notice of Countrywide's equitable lien or interest in the property.  See First Fidelity Thrift &

21  Loan Assn. v. Alliance Bank, 60 Cal.App.4th 1433 1442; 5 Miller & Starr, CALIFORNIA REAL

22  ESTATE, § 11:50.   A bona fide purchaser is one who pays value for the property without notice

23  of any adverse interest or of any irregularity in the sale proceedings.  Hochstein v. Romero, 219

24  Cal.App.3d 447, 451 (1990).   The elements of bona fide purchase are payment of value, in good

25  faith, and without actual or constructive notice of another's rights.  Melendrez v. D & I

26  Investment, Inc.,127 Cal.App.4th 1238, 1251 (2005); Gates Rubber Co. v. Ulman, 214

27

28                                              15

1 | Cal.App.3d 356, 364 (1989).

2 | `    The second element requires the buyer have neither knowledge nor notice of the

3 | competing claim. Triple A Management Co. v. Frisone, 69 Cal.App.4th 520, 530  (1999).  "A

4 | person generally has notice of a particular fact if that person has knowledge of circumstances

5 | which, upon reasonable inquiry, would lead to that particular fact."  First Fidelity Thrift & Loan

6 | Assn., 60 Cal.App.4th 1433, 1443 (1998); see also California Civ. Code, § 19; 5 MILLER &

7 | STARR, CAL. REAL ESTATE, Recording and Priorities, §§ 11:49- 11:51, 11:58-11:59.   The

8 | rationale for this requirement is that "[t]he recording laws were not enacted to protect those

9 | whose ignorance of the title is deliberate and intentional . . . Their purpose is to protect those

10 | who honestly believe they are acquiring a good title, and who invest some substantial sum in

11 | reliance on that belief." Beach v. Faust, 2 Cal.2d 290, 292-93  (1935); Melendrez, 127

12 | Cal.App.4th at 1252.

13 |     Counter-claimants contend that the court has no choice but to find them bona fide

14 | purchasers and they entitled to summary judgment based on the rational of First Fidelity Thirt &

15 | Loan Asso'n v. Alliance Bank, 60 Cal.App.4th 1433 (1998).    In First Fidelity, the borrower

16 | obtained a loan from First Fidelity, which originally encumbered the borrower's commercial

17 | property and also his home.  Id. at 1436.   The agreement provided that when a capital reduction

18 | payment was made, First Fidelity would reconvey the encumbrance on the borrower's home.

19 | When the borrower made the capital reduction payment, First Fidelity mistakenly instructed the

20 | trustee to reconvey the commercial property, not the home, and the trustee recorded a

21 | reconveyance of the commercial property, not the home.  Id.   Four months later, the borrower

22 | applied to Alliance for a loan.  Id.   In his application, the borrower listed the commercial

23 | properly and noted an encumbrance against this property in favor of First Fidelity.  Id.   Two

24 | months later, while the borrower's loan application to Alliance was still being processed, the

25 | borrower obtained a loan from a third bank, using the commercial property as collateral.  Id. at

26 | 1437.

27 |

28 |

1    Prior to funding its loan, Alliance's loan officer reviewed a preliminary and a

2    supplemental title report showing only the third bank's deed of trust and not First Fidelity's deed

3    of trust on the commercial property.  Id. at 1437.   Noting the discrepancy between this statement

4    and the borrower's loan application, the loan officer spoke to the borrower who told Alliance that

5    he had "refinanced" and that one of his properties had been released.   The borrow advised that

6    his application was in error, and that the deed of trust in favor of First Fidelity encumbered only

7    his home.  Id.  The Alliance loan officer then phoned the third party bank, and it advised that the

8    loan from First Fidelity against the commercial property had been repaid and First Fidelity held a

9    deed of trust only against the borrower's home.  Id. at 1437-38.  Alliance then funded its own

10    loan, and secured it by a second deed of trust on the commercial property.

11    Almost two years after Alliance initially funded its loan, First Fidelity discovered that it

12    had mistakenly reconveyed its deed of trust against the commercial property.  Id. at 1439.  First

13    Fidelity sued the borrower and obtained a judgment which reinstated First Fidelity's deed of trust

14    against the commercial property as of the date on which First Fidelity had recorded its lis

15    pendens.   This date was after the recording of Alliance's deed of trust, and thus First Fidelity's

16    deed of trust against the commercial property was junior in time to Alliance's deed of trust.  Id.

17    The third party bank was paid, and when both Alliance's and First Fidelity's deeds of

18    trust went into default and both lenders instituted foreclosure proceedings.  Id.   A lawsuit

19    between Alliance and First Fidelity resulted, with First Fidelity and Alliance both filing motions

20    for summary judgment.  First Fidelity contended that Alliance was not a bona fide encumbrancer

21    because Alliance had a duty to investigate the manner in which the encumbrance had been

22    released, making First Fidelity's encumbrance senior.  Alliance contended that it had no actual

23    notice of any outstanding interest held by First Fidelity and that it had no duty to investigate any

24    more than it did.   Id. at 1440.  The trial court denied First Fidelity's motion and granted

25    Alliance's motion, and First Fidelity appealed.  Id.

26    The Court of Appeal first confirmed that a good faith encumbrancer takes title clear of

27

28                                                    17

1  unknown and unrecorded liens.  Id. at 1440-41.  The court of appeal confirmed that First

2  Fidelity's claim was an equitable claim to reinstatement of a previously extinguished lien.  First

3  Fidelity, 60 Cal.App.4th at 1441. The question on summary judgment was whether there was a

4  triable issue of fact on whether Alliance had notice of First Fidelity's equitable claim.  Id.    The

5  California Court of Appeal concluded that Alliance presented evidence that it had no knowledge

6  that First Fidelity had an equitable claim.  Id. at 1442.   When the burden shifted to First Fidelity

7  to present evidence showing a triable issue of fact on whether Alliance did have constructive

8  notice of First Fidelity's claim, First Fidelity attempted to meet this burden by presenting

9  evidence of two facts: (1) That the borrower had initially listed a First Fidelity encumbrance

10 against the commercial property, and (2) That Alliance had not telephoned First Fidelity to

11 inquire.  Id.    On these facts, the Court of Appeal determined that Alliance had done all that was

12 required because upon being advised of one encumbrance in favor of First Fidelity and obtaining

13 a title report without such an encumbrance, Alliance was told that First Fidelity held an

14 encumbrance only against the borrower's home.  Id.  at 1444.   "No evidence was presented to

15 the effect that Alliance had reason to suspect that the unusual had occurred: that First Fidelity had

16 reconveyed by mistake."  Id.  While it might have been a good business practice for Alliance to

17 have done more, the California Court of Appeal concluded that "there is no authority for the

18 proposition that a prospective lender, learning that a prior deed of trust had been reconveyed, has

19 a duty to investigate further to determine whether that reconveyance was in error."  Id. 1444-45.

20  In making this finding, the California Court of Appeal noted Alliance had not ignored the

21 inconsistency.  Id. at 1445.   Instead, Alliance had obtained further clarification from the

22 borrower, spoke to the third party bank, and consulted a title report.  Id.    The California Court

23 of Appeal stated:

24          The inquiry legally required . . . is only a reasonable inquiry, not an exhaustive
           one. Although this is a matter of degree, the duty to inquire here was discharged
25          once the sole discrepancy had been explained in a manner consistent with normal
           practice.   As the Supreme Court stated in March, "[f]urther inquiries ... were not,
26          under these circumstances, necessary."

27

28                                                 18

1   Id. at 1445 (quoting March v. Pantaleo, 4 Cal.2d 242, 244 (1935)).

2       Relying on First Fidelity, Counter-claimants contend that they had no duty to investigate

3 the reason for the mistake concerning the CHL Deed of Trust, they had no duty to investigate

4 beyond the Property's record title, and they could rely on the title.   As such, Counter-claimants

5 contend they are entitled to a finding on summary judgment that they are bona fide purchasers.

6 However, the court cannot find that Counter-claimants are entitled to summary judgment based

7 on the undisputed facts.

8       As in First Fidelity, Counter-claimants have come forward with evidence that they did not

9 know about Countrywide's equitable claim.  And, as in First Fidelity, the issue on this motion for

10 summary judgment is whether Counter-defendants have presented the court with evidence to

11 raise a triable issue of fact on whether Counter-claimants had notice of Countrywide's equitable

12 claim and were not innocent purchasers for value.   However, unlike First Fidelity, Counter-

13 defendants have provided evidence of far greater knowledge of Countrywide's claim than

14 Alliance had.   Counter-defendants were sophisticated purchasers.    Boyajian knew that a

15 mistake had been made regarding the Property's title and Countrywide's interest in the property.

16 Unlike Alliance, Boyajian was never given any explanation for the mistake, nor did Boyajian

17 ever attempt to do anything to ascertain which inconsistent filing was the mistake.    When

18 Boyajian heard the starting bid price, Boyajian believed that there must be a first on the Property.

19  The fact the bidding stopped at such a low bid implies other bidders believed there was another,

20 superior, lien on the Property. The court finds that under the facts of this case there is a disputed

21 issue of fact on whether Counter-claimants' inquiry regarding the deed of trust was reasonable.

22 Although a matter of degree, the court cannot find as a matter of law the duty to make additional

23 inquires here was discharged because the discrepancies Counter-claimants knew about were

24 never explained.   Thus, Counter-claimants are not entitled to summary adjudication finding that

25 they are bona-fide purchasers as a matter of law based on First Fidelity.

26       In addition, based on the undisputed facts before the court, the court cannot find as a

27

28                          19

1  matter of law that Counter-claimants were or were not bona fide purchasers.   The court finds a

2  disputed issue of fact on whether Counter-claimants were bona fide purchases.    Based on the

3  submitted evidence, a trier of fact could conclude that Counter-claimants were bona fide

4  purchases, and a trier of fact could also conclude that Counter-claimants had notice of an

5  irregularity in the sale and of Countrywide's interest in the property.

6          The evidence showing Counter-claimants were bona-fide purchases is the simple fact that

7  the title to the property showed the Countrywide loan had been discharged.   In general, there is

8  no duty to investigate beyond the state of record title.   First Fidelity, 60 Cal.App.4th at 1444-45.

9  No party has cited a case finding that there is a duty to investigate title beyond the record title.

10  However, this case is less than simple.   Boyajian was a sophisticated investor.   Boyajian was a

11  partner in La Jolla II, and Boyajian bid on behalf of La Jolla II and Frazier at the sale.   Boyajian

12  testified that prior to the sale, Boyajian received a 15 page fax from the First American Title

13  Company consisting of documents recorded against the property.   Among the documents

14  Boyajian saw or knew about were the CHL List Trust Deed, the Full Reconveyance, and the CHL

15  HOD II.   Boyajian knew these documents were inconsistent.   Boyajian knew a mistake had been

16  made by concerning the Countrywide Deed of Trust.    Boyajian was informed by Sandi Jenkins,

17  a customer service representative for First American Title that the deed of trust in foreclosure

18  was a first deed of trust, and Boyajian responded that it could not be because of the amount

19  shown on the notice of sale it would seem there should be a first ahead of it.   Boyajian never

20  obtained a complete title report.   While Boyajian admits he knew there was a mistake,  Boyajian

21  provides evidence that he assumed the CHL NOD II was the mistake.    Boyajian has been in the

22  business of purchasing properties in foreclosure for many years and purchased hundreds of

23  properties in foreclosure.   At the time of the sale Boyajian and Frazier both knew the value of

24  the property exceeded $200,000.   Boyajian's high bid of $24,200 was accepted.   Boyajian was

25  ecstatic because the bid represented the largest profit he had ever made.

26          Boyajian did not call Countrywide or Nevada Trust about the loan or sale.    While the

27

28                                                      20

1   evidence shows that had Boyajian called he probably would have obtained no information, the

2   evidence before the court shows that had Boyajian called Nevada Trust, Boyajian would have

3   been referred to Mr. Gagnier who would have told Boyajian what Mr. Gagnier told all other

4   persons inquiring about the foreclosure sale – that the Countrywide First Trust Deed was still

5   valid and the Full Reconveyance was a mistake.   The information available to Boyajian showing

6   Countrywide may have an equitable interest is enough in this case to create a disputed issue of

7   fact on whether Counter-claimants were bona-fide purchasers despite the title showing no

8   interest by Countrywide.   Thus, the court finds it cannot grant summary adjudication on the issue

9   of whether Counter-claimants were bona fide purchasers.

10          Counter-defendants contend that a purchaser at a non-judicial foreclosure sale cannot be a

11   bona fide if the purchaser is a speculator who frequently purchases at foreclosure sales and pays

12   substantially less than the value of the property.  In Estate of Yates, 25 Cal.App.4th 511  (1994)

13   the trustee – knowing that the borrower had died and that the public administrator was

14   administering her estate – failed to give the estate any notice of the decedent's default.   Yates, 25

15   Cal.App.4th at 516.   While the property had been valued at $120,000 the year before foreclosure,

16   the buyer of the property, who purchased it from the successful bidder at the trustee's sale, paid

17   only $12,000 and took title subject to an existing $20,000 trust deed.  Id. at 515-17.   Based upon

18   the complete absence of notice to the administrator and a sale at a grossly inadequate price the

19   court set aside the trustee's sale.   Id. at 522-23.   The California Court of Appeal affirmed,

20   concluding that there was sufficient evidence to support the trial court's implied conclusion that

21   the buyer was not a bona fide purchaser.   This evidence included (1) the fact that the buyer had

22   purchased between 300 and 500 properties in foreclosure over 16 years, (2) the buyer's testimony

23   that there was a lot of equity in the property, and (3) the fact that there was a gross inadequacy of

24   the sales price.  Id. at 523.

25          Nowhere did the California Court of Appeal in Yates hold that the fact that a buyer is

26   experienced in purchasing foreclosure properties necessarily disqualifies him or her from being a

27

28                                                          21

1  bona fide purchaser.   To the contrary, the California Court of Appeal held that there was

2  sufficient evidence to support the trial court's conclusion that the buyer in that case had notice of

3  the sale's irregularity.   This conclusion was based in part upon the buyer's vast foreclosure

4  experience.  Other California Courts of Appeal have declined to read Yates to mean that an

5  experienced buyer cannot be a bona fide purchaser. Melendrez, 127 Cal.App.4th at 1252-53.

6  Further, there is no reasoned basis for a blanket rule that would preclude a buyer from being a

7  bona fide purchaser simply because he or she has experience in foreclosure sales and purchases

8  property at less than fair market value.   The law is designed to protect outside buyers who part

9  with value and have no knowledge or notice of a defect.   This purpose would relate to both the

10  novice and experienced foreclosure buyer alike.  Holding that an experienced foreclosure buyer

11  perforce cannot receive the benefits of being a bona fide purchase if he or she buys property for

12  less than its value would chill participation at trustees' sales by this entire class of buyers, and,

13  ultimately, could have the undesired effect of reducing sales prices at foreclosure.  Melendrez,

14  127 Cal.App.4th at 1253.   Thus, the court declines to find that Counter-defendants are entitled to

15  summary adjudication finding that Counter-claimants were not bona fide purchasers because they

16  were experienced bidders.

17       Accordingly, no party is entitled to summary judgment on the issue of whether Counter-

18  claimants were bona fide purchasers.   The court finds there is a disputed issue of material fact on

19  Counter-claimants' status as bona fide purchasers.

20

21  **B.  Grounds to Rescind the Sale – Defective Notice**

22       Counter-claimants contend that they are entitled to summary judgment on their claims

23  that they own the property because Nevada Trust had no grounds to rescind the sale.   Counter-

24  defendants contend that they are entitled to summary judgment on their claims that Nevada Trust

25  properly rescinded the sale.   Counter-defendants argue that California law mandated that the sale

26  be rescinded because the IRS was never given notice of the sale.   The IRS contends that it is

27

28                                            22

1  entitled to summary judgment because, regardless of who owns the property, the IRS did not

2  receive notice.

3          The parties factually agree that the IRS held a lien on the property.    The parties agree

4  that the IRS should have received notice of Nevada Trust's notice of sale.    The parties agree that

5  the IRS liens placed on the property prior to the sale remain regardless of who owns the property

6  because the IRS was not given proper notice.

7          Title 26 U.S.C. § 7425 provides the United States Code requirements when the IRS has a

8  lien on property.   Section 7425 provides:

9          (b) Other sales. . . . a sale of property on which the United States has or claims a
           lien . . .

10                  (1) shall, except as otherwise provided, be made subject to and without
                    disturbing such lien or title, if notice of such lien was filed or such title

11                  recorded in the place provided by law for such filing or recording more
                    than 30 days before such sale and the United States is not given notice of

12                  such sale in the manner prescribed in subsection (c)(1); or
                    (2) shall have the same effect with respect to the discharge or divestment

13                  of such lien or such title of the United States, as may be provided with
                    respect to such matters by the local law of the place where such property is

14                  situated, if--
                            (A) notice of such lien or such title was not filed or recorded in the

15                          place provided by law for such filing more than 30 days before
                            such sale,

16                          (B) the law makes no provision for such filing, or
                            (C) notice of such sale is given in the manner prescribed in

17                          subsection (c)(1).
           (c) Special rules.--

18                  (1) Notice of sale.--Notice of a sale to which subsection (b) applies shall
                    be given (in accordance with regulations prescribed by the Secretary) in

19                  writing, by registered or certified mail or by personal service, not less than
                    25 days prior to such sale, to the Secretary.

20                  (2) Consent to sale.--Notwithstanding the notice requirement of subsection
                    (b)(2)(C), a sale described in subsection (b) of property shall discharge or

21                  divest such property of the lien or title of the United States if the United
                    States consents to the sale of such property free of such lien or title.

22          . . . .

23  26 U.S.C.A. § 7425.   Section 7425 provides that the remedy if the IRS is not given sufficient

24  notice of a sale is that any purchaser of the property takes the property subject to the IRS's lien.

25  Neither Section 7425, nor any other federal statute cited by the parties, provides rescission of the

26  sale as a remedy for improper notice to the IRS.      However, the parties agree that Nevada

27

28                                                      23

1    Trust's rescission of the sale is proper if authorized under California law.

2    *__1. California Civil Code 2924b(c)(4)__*

3         Counter-defendants contend that they are entitled to summary judgment because

4    California Civil Code § 2924b(c)(4) required Nevada Trust to rescind the sale because the IRS

5    was not given proper notice.   In light of Section 2924b(c)(4)'s provisions, Counter-defendants

6    allege that Nevada Trust properly rescinded the sale and Counter-claimants have no interest in

7    the property.   As such, Counter-defendants conclude that they are entitled to summary judgment

8    on Counter-claimants' claims alleging they have an interest in the property.   Counter-claimants

9    contend that Counter-defendants are not entitled to summary judgment because Section

10   2924b(c)(4) was not the law at the time the sale took place.

11        California Civil Code § 1058.5 allows a trustee to rescind a notice of a sale's recession.

12   Section 1058.5(b) provides:

13       (b) Where a trustee's deed is invalidated by a pending bankruptcy or otherwise,
     recondition of a notice of rescission of the trustee's deed . . . shall restore the
14   condition of record title to the real property described in the trustee's deed and the
     existence and priority of all lienholders to the status quo prior to the recondition of
15   the trustee's deed upon sale.   Only the trustee or beneficiary who caused the
     trustee's deed to be recorded, or his or her successor in interest, may record a
16   notice of rescission.

17   Cal.Civ.Code § 1058.5(b).   California Civil Code § 2924b(c)(4) requires the IRS to be given

18   notice of trustee sale and allows for rescission if the IRS is not given notice.

19       (4) Provide a copy of the notice of sale to the Internal Revenue Service, in
     accordance with Section 7425 of the Internal Revenue Code and any applicable
20   federal regulation, if a "Notice of Federal Tax Lien under Internal Revenue Laws"
     has been recorded, subsequent to the deed of trust or mortgage being foreclosed,
21   against the real property to which the notice of sale applies. The failure to provide
     the Internal Revenue Service with a copy of the notice of sale pursuant to this
22   paragraph shall be sufficient cause to rescind the trustee's sale and invalidate the
     trustee's deed, at the option of either the successful bidder at the trustee's sale or
23   the trustee, and in either case with the consent of the beneficiary. Any option to
     rescind the trustee's sale pursuant to this paragraph shall be exercised prior to any
24   transfer of the property by the successful bidder to a bona fide purchaser for value.
     A rescission of the trustee's sale pursuant to this paragraph may be recorded in a
25   notice of rescission pursuant to Section 1058.5.

26   West's Ann.Cal.Civ.Code § 2924b(d).   Citing to Section 2924b(d), Counter-defendants contend

27

28                          24

Nevada Trust properly rescinded the sale because the IRS was not given proper notice.

Counter-claimants do not argue the IRS was given proper notice.   Rather, Counter-claimants contend that Section 2924b(d) was not in effect in 2002.   As such, Counter-claimants argue that Nevada Trust had no basis to rescind the sale.

The version of California Civil Code § 2924b effective from October 2, 2001 to December 31, 2002 provided as follows:

> (a) [requirements for a person desiring a copy of any notice of default and of any notice of sale under any deed of trust or mortgage with power of sale upon real property or an estate for years]
> (b) The mortgagee, trustee, or other person authorized to record the notice of default shall do each of the following:
> (1) Within 10 business days following recondition of the notice of default . . . mail . . . . a copy of the notice with the recording date shown thereon, addressed to each person whose name and address are set forth in a duly recorded request therefor . . . .
> . . . .
> (c) The mortgagee, trustee, or other person authorized to record the notice of default shall do the following:
> (1) Within one month following recondition of the notice of default . . . mail . . . a copy of the notice with the recording date shown thereon, addressed to each person set forth in paragraph (2)
> (2) The persons to whom notice shall be mailed under this subdivision are:
> (A) The successor in interest, as of the recording date of the notice of default, of the estate or interest or any portion thereof of the trustor or mortgagor of the deed of trust or mortgage being foreclosed.
> (B) The beneficiary or mortgagee of any deed of trust or mortgage recorded subsequent to the deed of trust or mortgage being foreclosed, or recorded prior to or concurrently with the deed of trust or mortgage being foreclosed but subject to a recorded agreement or a recorded statement of subordination to the deed of trust or mortgage being foreclosed.
> (3) At least 20 days before the date of sale . . . mail . . . notice . . . . to the office of any state taxing agency, Sacramento, California, which has recorded a notice of tax lien prior to the recording date of the notice of default against the real property to which the notice of default applies.
> (4) Provide a copy of the notice of sale to the Internal Revenue Service, in accordance with Section 7425 of the Internal Revenue Code and any applicable federal regulation, if a "Notice of Federal Tax Lien under Internal Revenue laws" has been recorded against the real property to which the notice of sale applies.
> . . . .

Cal.Civ.Code § 2924b (2002).  Unlike the current version of Section 2924b, the 2002 version only required notice to the IRS.   The 2002 version did not allow a trustee to rescind a sale if

1   notice was not properly given.    In 2002 it was unclear what the proper remedy would have been

2   if notice to the IRS was not properly given.

3       In general, statutes that affect substantial rights are not given retroactive effect unless the

4   legislature shows that it intended a statute to have a retroactive effect.  Evangelatos v. Superior

5   Court, 44 Cal.3d 1188, 1207 (1988).   Counter-defendants have cited no persuasive authority that

6   Section 2924b was to be given retroactive effect.  As such, the court does not find Nevada

7   Trust's rescission of the sale based on Section 2924b proper as a matter of law.  Thus, Counter-

8   defendants are not entitled to summary judgment on the ground that the rescission was proper.

9   ***B.  Other Basis for Rescission***

10      Finding that California Civil Code § 2924b does not validate Nevada Trust's reccesion

11  does not necessarily provide Counter-claimants with summary judgment on their claim that there

12  were no valid grounds to rescind the sale.    In their opposition to Counter-claimants' motion and

13  reply brief, Counter-defendants point out another basis to make Nevada Trust's rescission of the

14  sale valid.    Section 1058.5 has allowed for the rescission of a trustee's deed of sale since 1993.

15  As stated above, California Civil Code § 1058.5(b) allows other reasons for rescission, and reads

16  in part: "Where a trustee's deed is invalidated by a pending bankruptcy or otherwise, recondition

17  of a notice of rescission of the trustee's deed . . .[that]  names of all trustors and beneficiaries, the

18  location of the property subject to the deed of trust, and the reason for rescission, shall restore the

19  condition of record title to the real property described in the trustee's deed and the existence and

20  priority of all lien holders to the status quo prior to the recondition of the trustee's deed upon

21  sale."

22      Using Section 1058.5(b), a trustee may set aside or void a otherwise completed non-

23  judicial foreclosure sale even after the trustee's deed is delivered to the high bidding purchaser

24  under certain circumstances in the absence of an intervening bona fide purchaser.  RUTTER, CAL.

25  PRACTICE GUIDE: REAL PROP. TRANSACTIONS Ch. 6-I, § 6:535.35.   Statutorily deficient notice of

26  default and/or notice of the sale is grounds to set aside a sale.   The statutory requirements of

27

28                                      26

Section 2924 must be strictly complied with, and a trustee's sale based on a statutorily deficient notice of default is invalid.   Miller v. Cote, 127 Cal.App.3d 888, 894 (1982).    In addition, fraud or deceit in the foreclosure process is likewise ground to set aside the sale.    South Bay Bldg. Enterprises, Inc. v. Riviera Lend–Lease, Inc., 72 Cal.App.4th 1111, 1121 (1999).   A foreclosure sale may also be set aside where there has been a mistake of such magnitude "that to allow it to stand would be inequitable to purchaser and parties."    Bank of America Nat'l Trust & Sav. Ass'n v. Reidy, 15 Cal.2d 243, 248 (1940).   Finally, an inadequate sale price coupled with a procedural irregularity may warrant a set-aside of a completed foreclosure sale just as it may be a basis for aborting a sale not yet completed (¶ 6:535.18). Knapp v. Doherty, 123 Cal.App. 4th 76, 94–97 (2004).

### *1.  Inadequate Notice*

Counter-defendants contend that at the time of the sale California law required notice to the IRS.   Even if California law did not provide rescission as a remedy for non-notice to the IRS. Counter-defendants contend that under the above authority, a trustee may still set aside a otherwise completed non-judicial foreclosure sale even after the trustee's deed is delivered for statutory deficient notice.   Counter-claimants contend the recitals in the deed of trust found in California Civil Code § 2924 prevent rescission based on inadequate notice.

California Civil Code § 2924 limits the trustee's ability to set aside a deed of trust for failures in notice if the trustee's deed complied with Section 2924.   A recital in the trustee's deed of compliance with "all requirements of law" regarding mailing or personal delivery and publication or posting of the copies of notice of default and notice of sale "shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice."   California Civil Code § 2924.   Setting aside a trustee's sale for inadequate notice is not possible in the event of a bona fide purchaser who has the benefit of a conclusive presumption that the foreclosure sale was properly noticed. Melendrez v. D & I Investment, Inc., (2005) 127 Cal. App. 4th 1238, 1255

(2005);  Bank of America, N.A. v. La Jolla Group II, 129 Cal.App.4th 706, 714  (2004);

Kolodge v. Boyd, 88 Cal.App.4th 349, 359  (2001).

In this case, there is a disputed issue of fact over whether Counter-claimants were bona fide purchasers.   If Counter-claimants were bona fide purchasers, Nevada Trust had no common law ability to rescind the sale even if notice to the IRS was improper in light of Section 2924. Because there is an issue on whether Counter-claimants were bona fide purchasers, the court cannot decide on summary judgment whether Nevada Trust could properly rescind the sale for lack of notice to the IRS.

### 2.  Other Reasons to Invalidate the Sale

In their opposition to Counter-claimants motion, Counter-defendants contend that other irregularities in the sale allowed for rescission despite Section 2924.

"A non-judicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'"  Melendrez,  127 Cal.App.4th at 1258 (quoting Brown v. Busch, 152 Cal.App.2d 200, 204 (1957)).   One attacking such a sale must overcome this common law presumption by substantial evidence of prejudicial procedural irregularity. Melendrez,  127 Cal.App.4th at 1258;  Knapp v. Doherty, 123 Cal.App.4th 76, 87 (2004).

While mere inadequacy of price, standing alone, will not justify setting aside a trustee's sale, gross inadequacy of price coupled with even slight unfairness or irregularity is a sufficient basis for setting the sale aside."  Estate of Yates, 25 Cal.App.4th at 523;   Whitman v. Transtate Title Co. 165 Cal.App.3d 312, 323 (1985);  Miller and Starr, California Real Estate 3d § 10:210 (2006).  "The inquiry is whether, recognizing the purposes of the statutory scheme, there is a substantial defect in the statutory procedure that is prejudicial to the interests of the trustor and claimants."  Residential Capital v. Cal-Western Reconveyance Corp., 108 Cal.App.4th 807, 822 (2003).   If the trustee's deed with the appropriate recitations has been issued to a bona fide purchaser, the purpose of the statutory scheme to provide a prompt and efficient remedy for creditors is implemented by the section 2924 statutory presumption of finality. Residential

1  Capital v. Cal-Western Reconveyance Corp., 108 Cal.App.4th 807, 822 (2003).

2          Unlike notice errors, Section 2924 does not assist Counter-claimants if there were other

3  irregularities in a sale.   The statutory presumption in favor of a bona fide purchaser at non-

4  judicial foreclosure sale found in Section 2924 pertains only to notice requirements for sale, and

5  it does not apply to other requirements of the foreclosure process.  CA JUR. 3D DEEDS OF TRUST §

6  318 Irregularities in conduct of sale; 4 MILLER & STARR, § 10:211, p. 680; see also Bank of

7  America, N.A. v. La Jolla Group II, 129 Cal.App.4th at 714 (2005).   For example, the Section

8  2924 recites do not protect purchasers when the trustee violated its statutory obligation of

9  postponing the sale upon agreement of the beneficiary and trustor.   Melendrez,  127 Cal.App.4th

10  at 1255-56.

11          In their opposition, Counter-defendants provide evidence that other irregularities were

12  also present in this sale.   Counter-defendants provide evidence that Mr. Gagnier, President of

13  Nevada Trust, concluded that the Full Reconveyance of the Countrywide Deed of Trust was a

14  mistake.   To prevent people from bidding at the sale thinking Countrywide no longer had a lien,

15  Gagnier instructed that all inquires concerning the foreclosure be forwarded to him personally,

16  and he advised all who called that the Full Reconveyance had been recorded in error.   Counter-

17  defendants also provide evidence that Boyajian knew the value of the property was $230,000 and

18  that he expected the property to be sold at auction for $120,000 to $130,000.   While there were

19  seven to ten people at the sale, the bidding stopped at $24,2000.   From this evidence, Counter-

20  defendants allege an inference can be made that others bidding on the Property believed

21  Countrywide retained a first deed of trust.   Given these irregularities in the foreclosure process

22  and low sales price, Counter-defendants contend there were sufficient grounds to rescind the sale

23  pursuant to the Yates line of cases.

24          The problem with Counter-defendant's position is this contention was not raised in

25  Counter-defendants' motion for summary judgment – only in Counter-defendants' opposition to

26  Counter-claimants' motion.   Thus, the court cannot grant summary judgment to Counter-

27

28                                                          29

1  defendants based on this theory.    However, the presence of <u>Yates</u> and the allowance for

2  rescission in the event of  gross inadequacy of price coupled with unfairness or irregularity

3  prevents the court from granting summary judgment to Counter-claimants' on the ground Nevada

4  Trust had no legal reason to rescind the sale.    Counter-defendants have raised sufficient

5  evidence of a disputed issue of fact on whether the sale's proceeds were grossly inadequate and

6  whether irregularities about the differences of information known by bidders creates an

7  irregularity.    Thus, the court finds a disputed issue of material fact on whether Nevada Trust

8  correctly rescinded the sale based on inadequate price along with other irregularities.

9          Accordingly, no party is entitled to summary judgment on the issue of whether Nevada

10  Trust's rescission of the sale was proper under California law.

11

12  **C. Negligence**

13          In their motion, Counter-defendants CTC and Nevada Trust contend that they are entitled

14  to summary judgment on Counter-claimants claim for negligence.    The court previously found a

15  common law negligence claim available citing  <u>Seeley v. Semour</u>, 190 Cal.App.3d 844 (1987),

16  <u>Stalberg v. Western Title Insurance Co.</u>, 27 Cal.App.4th 925 (1994).   Counter-defendants now

17  contend that they their actions concerning the title are privileged pursuant to California Civil

18  Code § 47.

19          California Civil Code § 2920 provides for the transfers of mortgages, powers of sale,

20  notice of defaults and elections to sell, recording, waiting periods, notices of sales, and

21  compliance.    Section 2920 is found in Division 3 of the California Civil Code, Part 4, Title 14,

22  Chapter 2,  Article 1.   Article 1, in general, provides for various duties of trustees and others

23  when dealing with mortgages, deeds of trust, and foreclosure sales.    Section 2920 states in part:

24  The mailing, publication, and delivery of notices as required herein, and the performance of the

25  procedures set forth in this article, shall constitute privileged communications within Section

26  47."   Cal. Civ. Code § 2924.    Section 47 defines privileged publication or broadcasts as:

27

28                                                          30

(a) In the proper discharge of an official duty.

(b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows:

(1) An allegation or averment contained in any pleading or affidavit filed in an action for marital dissolution or legal separation made of or concerning a person by or against whom no affirmative relief is prayed in the action shall not be a privileged publication or broadcast as to the person making the allegation or averment within the meaning of this section unless the pleading is verified or affidavit sworn to, and is made without malice, by one having reasonable and probable cause for believing the truth of the allegation or averment and unless the allegation or averment is material and relevant to the issues in the action.

(2) This subdivision does not make privileged any communication made in furtherance of an act of intentional destruction or alteration of physical evidence undertaken for the purpose of depriving a party to litigation of the use of that evidence, whether or not the content of the communication is the subject of a subsequent publication or broadcast which is privileged pursuant to this section. As used in this paragraph, "physical evidence" means evidence specified in Section 250 of the Evidence Code or evidence that is property of any type specified in Chapter 14 (commencing with Section 2031.010) of Title 4 of Part 4 of the Code of Civil Procedure.

(3) This subdivision does not make privileged any communication made in a judicial proceeding knowingly concealing the existence of an insurance policy or policies.

(4) A recorded lis pendens is not a privileged publication unless it identifies an action previously filed with a court of competent jurisdiction which affects the title or right of possession of real property, as authorized or required by law.

(c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information. This subdivision applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant. This subdivision authorizes a current or former employer, or the employer's agent, to answer whether or not the employer would rehire a current or former employee. This subdivision shall not apply to a communication concerning the speech or activities of an applicant for employment if the speech or activities are constitutionally protected, or otherwise protected by Section 527.3 of the Code of Civil Procedure or any other provision of law.

(d)(1) By a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding, or (D) of anything said in the course thereof, or (E) of a verified charge or complaint made by any person to a public official, upon which complaint a warrant has been issued.

(2) Nothing in paragraph (1) shall make privileged any communication to a public

31

journal that does any of the following:
    (A) Violates Rule 5-120 of the State Bar Rules of Professional Conduct.
    (B) Breaches a court order.
    (C) Violates any requirement of confidentiality imposed by law.
(e) By a fair and true report of (1) the proceedings of a public meeting, if the meeting was lawfully convened for a lawful purpose and open to the public, or (2) the publication of the matter complained of was for the public benefit.

Cal. Civil Code § 47.

Counter-claimants correctly admit that no case authority has applied Section 47's privileges to the actions of a trustee in conducting foreclosure sales and/or placing notices on titles. However, taking Section 2920 with Section 47, it appears the basis of CTC's and Nevada Trust's actions are privileged. While Section 2920 waves some privileges if the action was done with malice, there is no evidence of malice alleged or shown in this action. Counter-claimants have provided no argument or evidence on why Section 47's privileges would not apply to CTC's and Nevada Trust's actions in this case. Accordingly, based on the plain reading of these statutes, the court finds that CTC and Nevada Trust are entitled to summary judgment on Counter-claimants' claims of negligence because CTC's and Nevada Trust's conduct giving rise to the negligence claims was privledged.

**D.   Return of Funds to Counter-claimants From Countrywide**

It is undisputed that Counter-claimants paid Countrywide the sum of $22,721.22 in order to prevent a foreclosure sale on the Countrywide deed of trust. In the event the court rules in favor of Counter-claimants on the rest of their motion for summary judgment, Counter-claimants contend that they are entitled to a return of their $22,721.22. Because the court finds a disputed issue of fact on whether Counter-claimants were bona fide purchasers and whether Nevada Trust had a valid reason to rescind the sale, the court has not made a finding in Counter-claimants favor concerning the validity of the Countrywide Deed of Trust. Thus, the court cannot grant summary judgment on Counter-claimants' request for the return of funds.

32

**E.  United States' Motion**

The United States has moved for summary judgment, asking the court to establish that the tax assessment liens on the Property were not disturbed by the sale or the rescission.    The only party who has filed an opposition to the United States' motion is Counter-claimants.    Counter-claimants concede that the notice of sale given by Nevada Trust to the IRS was untimely.    Counter-claimants state that any IRS liens which were recorded against the Property prior to the sale remain on the Property.

The court finds IRS continues to have a valid lien on the property regardless of who owns the property.   As discussed above, the IRS was not given proper notice of the sale.   The undisputed facts reveal that the IRS filed its Notice of Federal Tax Lien with the Fresno County Recorder's Office by August 18, 2000, prior to either the sale or rescission of the sale. Accordingly, the United States is entitled to summary adjudication, finding that the federal tax liens on the Property were not disturbed by any of the events being litigated in this action, were not disturbed by either the sale or rescission of the sale, and the IRS lien continues to encumber the Property regardless of the owner.


**ORDER**

Based on the above memorandum opinion, the court ORDERS that:

1.    Counter-claimants' motion for summary judgment is DENIED;

2.    Counter-defendants' motion for summary judgment is DENIED in part and GRANTED in part;

   a.    CTC and Nevada Trust are granted summary adjudication on Counter-claimants' negligence claims against CTC and Nevada Trust;

   b.    Counter-defendants' motion for summary judgment is denied in all other respects;

1          3.      The United States' motion for summary adjudication is GRANTED;

2              a.     The court finds that the federal tax liens on the Property were not

3                    disturbed by any of the events at issue in this action, were not

4                    disturbed by either the sale or rescission of the sale, and the IRS

5                    lien continues to encumber the Property regardless of the owner.

6  IT IS SO ORDERED.

7  **Dated:   January 8, 2007**          **/s/ Anthony W. Ishii**

8  9h0d30                         UNITED STATES DISTRICT JUDGE

34