IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTRYWIDE HOME LOANS, Inc. a New York Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA, acting through the Internal Revenue Service, et. al.<br><br>    Defendants.<br>_____<br>LA JOLLA GROUP II, a California general partnership, and TERRANCE FRAIZER,<br><br>    Counter-Claimants,<br><br>  v.<br><br>COUNTRYWIDE HOME LOANS, INC., a New York corporation; NEVADA TRUST DEED SERVICES, INC., a Nevada corporation; LA SALLE NATIONAL BANK as TRUSTEE FOR AVONDALE HOME EQUITY LOAN TRUST 1998-1, an entity form unknown; UNITED STATES OF AMERICA, acting through the INTERNAL REVENUE SERVICE; CTC REAL ESTATE SERVICES, a California corporation; ROBERT G. GONZALES, an individual; and MARISELA GONZALES, an individual,<br><br>    Counter-Defendants. | 1:02 – CV - 6405 AWI SMS<br><br>**ORDER SETTING AMOUNT OF EQUITABLE LIEN**<br><br>(DOC. 317) |

# INTRODUCTION

Plaintiff, Countrywidc Home Loans, Inc., (hereinafter "Countrywide") seeks an order setting the amount of the equitable lien pursuant to the Judgment entered by this Court on May 27, 2011.

# FACTUAL AND LEGAL BACKGROUND

On February 9, 1994, Marisela and Robert G. Gonzales executed a deed of trust in favor of Victoria Mortgage Company (hereinafter "Victoria") in the amount of $189,000.00 affecting the real property located at 765 E. Woodhaven, Fresno, California. On July 14, 1994 the beneficial interest under the deed of trust with Victoria was assigned to Countrywide.

On February 25, 1998 the Gonzaleses executed a second deed of trust in favor of Avondale Federal Savings Bank (hereinafter "Avondale") in the amount of $189,000.00. Defendant La Salle National bank is the successor in interest to Avondale.

On August 18, 2000, the Internal Revenue Service (hereinafter "IRS") recorded a Notice of Federal Tax Lien with the Fresno County recorder, relating to tax assessments made in 1997, 1998, and 1999. The tax assessments against Robert Gonzales between tax, penalties, and interest were in the amounts of $3,483.28 in 1997, $7,989.61 in 1998, and $8,847.82 in 1999.

Thereafter the Gonzaleses defaulted on the Countrywide loan and Countrywide began non-judicial foreclosure proceedings by recording a Notice of Default and Election to Sell Under Deed of Trust on April 6, 2001. The Gonzaleses cured the default under the Countrywide loan prior to a trustee's sale. Rather than rescinding the Notice of Default,

Case 1:02-cv-06405-AWI-GSA   Document 322   Filed 04/04/13   Page 3 of 6

Countrywide, in error, executed and caused to be recorded a full reconveyance of the deed of trust on August 3, 2001.

The Gonzaleses made the August and September 2001 payments then again fell into default. Countrywide again began non-judicial foreclosure proceedings by recording a Notice of Default and Election to Sell Under Deed of Trust on January 4, 2002.

On March 15, 2002, Robert Gonzales filed for bankruptcy in the United States Bankruptcy Court, Eastern District of California (Fresno). The Countrywide and La Salle foreclosure sales were automatically stayed. Countrywide obtained relief from the stay and a trustee's sale under the La Salle Trust deed was conducted on August 15, 2002. La Jolla Group II and Terrance Frazier submitted the successful bid of $24,200.00. La Jolla Group II ("La Jolla") is a general partnership consisting Alan Boyajian and Lee Kleim. La Jolla has been in the business of buying, selling and leasing residential foreclosure properties since 1987. Frazier began buying property on his own behalf in 1995. Boyajian and Frazier personally attended the sale.

Prior to his purchase of the real property, Boyajian estimated its value at $235,000. Neither Boyajian nor Frazier had obtained a preliminary report, guarantee, or commitment from a title company prior to bidding at the foreclosure sale. Boyajian investigated the state of title of the real property by requesting from First American Title Company copies of "open" trust deeds, i.e., trust deeds which had not been reconveyed. Due to the erroneous reconveyance the search yielded no results.

On April 28, 2002 and May 3, 2002 Boyajian sought and obtained from First American documents concerning liens against the real property. Provided in response to

-3-

Boyajian's request was the second Countrywide Home Loans Notice of Default that had been filed on January 4, 2002. Boyajian knew that there was an inconsistency between the reconveyance and the notice of default but believed that the latter was filed as a mistake. Boyajian did not attempt to contact the trustee to determine whether the notice of default was a mistake. Nor did Boyajian attempt to contact anyone at Countrywide concerning the apparent discrepancy. Boyajian further failed to contact Nevada Trust to determine their lien holder priority in light of the Countrywide Notice of Default. Boyajian's decision not to contact any of the three entities was informed by his experience that none would give out the information that he sought.

Countrywide presented evidence to suggest that in contacting either Countrywide or Nevada Trust prior to the foreclosure sale Boyajian would have discovered that the Countrywide Loan had not been paid in full and that Countrywide still held an active interest in the real property.

Based on the foregoing factual background the Ninth Circuit determined that La Jolla and Fraizer were not bona fide purchasers for value. The inconsistencies articulated above put defendants on notice because they had knowledge of circumstances, which, upon reasonable inquiry, would have led to discovery of Countrywide's unrecorded lien.

The Ninth Circuit held that Countrywide is not entitled to rescission based on either of the two theories advanced: collusion between the defendants or failure to give adequate notice to the IRS. The former was rejected because Countrywide has not proved that it was prejudiced by any collusion between the defendants, i.e. there is no evidence to suggest that the procedural irregularity contributed to the inadequacy of the price of the

real property sale. The latter was rejected because Cal. Civ. Code § 2924b(c)(4), obligating trustees to notify the IRS of foreclosure sales, was enacted after the sale of the real property in question.

The Ninth Circuit came to the conclusion that the erroneous Notice of Full Reconveyance converted Countrywide's senior deed of trust into an equitable lien of equal priority.

## DISCUSSION

This Court now rules on Countrywide's motion for order setting the amount of the equitable lien found by the Ninth Circuit. No part of this order is to be interpreted as changing the nature Countrywide's equitable lien. This order merely sets the amount.

A. Amount of the Equitable Lien

Countrywide provided to this court an itemization of indebtedness as follows:

| | |
|---|---:|
| Unpaid Principal Balance | $166,707.67 |
| Accrued Interest 9/01/02 to 1/18/13 | $121,128.55 |
| Late Charges at $125.41 per month | $188.61 |
| Escrow Advance Balance | $51,983.99 |
| Property Inspections | $0.00 |
| Corporate Advance Balance | $2,609.25 |
| Recording and Reconveyance Fees | $48.00 |
| Total Due | $394,650.06 |

The foregoing itemization was provided as part of Countrywide's motion for order setting amount of equitable lien and the accompanying declaration of Mortgage Resolution Specialist, Ryan Lo. This Court independently recalculated the figures put forth by Countrywide and has found that the figure of $394,650.06 is $51,983.99 higher than the figure reached by the court of $342,666.07 based on Countrywide's figures.

## ORDER

Accordingly, the amount of the equitable lien of Countrywide Home Loans Inc. is set at the sum of $342,666.07 as of January 18, 2013 and $31.9713 per diem thereafter, against the property located at 765 E. Woodhaven Avenue, Fresno California and legally described as:

> LOT 14 of TRACT No. 3374, Mount Vernon Place No. 1, in the City of Fresno, State of California. According to the Map Thereof, recorded August 24, 1984 in Book 41, at Pages 97 to 100 Inclusive of Maps, Fresno County Records.

IT IS SO ORDERED.

Dated:   April 4, 2013                                 _____
                                                                    SENIOR  DISTRICT  JUDGE