IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

COUNTRYWIDE HOME LOANS, Inc. a New York Corporation,

Plaintiff,

v.

UNITED STATES OF AMERICA, acting through the Internal Revenue Service, et. al.

Defendants.

---

LA JOLLA GROUP II, a California general partnership, and TERRANCE FRAZIER,

Counter-Claimants,

v.

COUNTRYWIDE HOME LOANS, INC., a New York corporation; NEVADA TRUST DEED SERVICES, INC., a Nevada corporation; LA SALLE NATIONAL BANK as TRUSTEE FOR AVONDALE HOME EQUITY LOAN TRUST 1998-1, an entity form unknown; UNITED STATES OF AMERICA, acting through the INTERNAL REVENUE SERVICE; CTC REAL ESTATE SERVICES, a California corporation; ROBERT G. GONZALES, an individual; and MARISELA GONZALES, an individual,

Counter-Defendants.

1:02-CV-6405-AWI-SMS

**AMENDED ORDER ON APPLICATION FOR ORDER OF SALE OF DWELLING AND MOTION TO RECALL AND QUASH WRITS OF EXECUTION, ABSTRACT OF JUDGMENT AND VACATE NOTICE OF LEVY**

(DOC. 331 & 332)

## INTRODUCTION

Plaintiff, Countrywide Home Loans, Inc. ("Countrywide"), seeks an order for sale of dwelling as to the real property located at 765 E. Woodhaven, Fresno, California, pursuant to the Judgment entered on May 27, 2011 and the Order Setting Amount of Equitable Lien rendered on April 4, 2013, valued at $342,666.07 as of January 18, 2013 and $31.9713 per diem thereafter. Conversely, Counter-Claimants, La Jolla Group II ("La Jolla") and Terrance Frazier, seek to recall and quash writs of execution issued on August 21, 2014 and December 9, 2014 and the abstract of judgment issued on August 21, 2014, and to vacate the notice of levy posted on the subject real property on February 10, 2015.

## FACTUAL AND LEGAL BACKGROUND

On February 9, 1994, Marisela and Robert G. Gonzales ("the Gonzaleses") executed a deed of trust in favor of Victoria Mortgage Company ("Victoria") in the amount of $189,000.00 affecting the real property located at 765 E. Woodhaven, Fresno, California. On July 14, 1994, the beneficial interest under the deed of trust with Victoria was assigned to Countrywide.

On February 25, 1998, the Gonzaleses executed a second deed of trust in favor of Avondale Federal Savings Bank ("Avondale") in the amount of $189,000.00. Defendant La Salle National bank is the successor in interest to Avondale.

On August 18, 2000, the Internal Revenue Service ("IRS") recorded a Notice of Federal Tax Lien with the Fresno County recorder, relating to tax assessments made in

1997, 1998, and 1999. The tax assessments against Robert Gonzales between tax, penalties, and interest were in the amounts of $3,483.28 in 1997, $7,989.61 in 1998, and $8,847.82 in 1999.

Thereafter the Gonzaleses defaulted on the Countrywide loan and Countrywide began non-judicial foreclosure proceedings by recording a Notice of Default and Election to Sell Under Deed of Trust on April 6, 2001. The Gonzaleses cured the default under the Countrywide loan prior to a trustee's sale. Rather than rescinding the Notice of Default, Countrywide, in error, executed and caused to be recorded a full reconveyance of the deed of trust on August 3, 2001.

The Gonzaleses made the August and September 2001 payments then again fell into default. Countrywide again began non-judicial foreclosure proceedings by recording a Notice of Default and Election to Sell Under Deed of Trust on January 4, 2002.

On March 15, 2002, Robert Gonzales filed for bankruptcy in the United States Bankruptcy Court, Eastern District of California (Fresno). The Countrywide and La Salle foreclosure sales were automatically stayed. Countrywide obtained relief from the stay, but Nevada Trust Deed Services, Inc. ("Nevada Trust") conducted a foreclosure sale under the La Salle Trust deed on August 15, 2002. La Jolla and Frazier submitted the successful bid of $24,200.00. La Jolla is a general partnership consisting Alan Boyajian and Lee Kleim. La Jolla has been in the business of buying, selling, and leasing residential foreclosure properties since 1987. Frazier began buying property on his own behalf in 1995. Boyajian and Frazier personally attended the sale.

Prior to his purchase of the real property, Boyajian estimated its value at $235,000. Neither Boyajian nor Frazier had obtained a preliminary report, guarantee, or commitment from a title company prior to bidding at the foreclosure sale. Boyajian investigated the state of title of the real property by requesting from First American Title Company copies of "open" trust deeds, i.e., trust deeds that have not been reconveyed. Due to the erroneous reconveyance the search yielded no results.

On April 28, 2002 and May 3, 2002, Boyajian sought and obtained from First American documents concerning liens against the real property. Provided in response to Boyajian's request was the second Countrywide Notice of Default that had been filed on January 4, 2002. Boyajian knew that there was an inconsistency between the reconveyance and the notice of default but believed that the latter was filed as a mistake. Boyajian did not attempt to contact the trustee to determine whether the notice of default was a mistake. Nor did Boyajian attempt to contact anyone at Countrywide concerning the apparent discrepancy. Boyajian further failed to contact Nevada Trust to determine its lien holder priority in light of the Countrywide Notice of Default. Boyajian's decision not to contact any of these three entities was informed by his experience that none would give out the information that he sought.

Countrywide presented evidence to suggest that in contacting either Countrywide or Nevada Trust prior to the foreclosure sale Boyajian would have discovered that the Countrywide Loan had not been paid in full and that Countrywide still held an active interest in the real property.

On May 2, 2007, this court held a bench trial for the matter. The court held that La Jolla and Frazier were bona fide purchasers at the subject foreclosure sale who took free of the equitable lien created by the erroneously reconveyed Countrywide deed of trust.

On appeal, the Ninth Circuit reversed and remanded and determined that La Jolla and Frazier were not bona fide purchasers for value. The inconsistencies articulated above put La Jolla and Frazier on notice because they had knowledge of circumstances, which, upon reasonable inquiry, would have led to discovery of Countrywide's unrecorded lien.

The Ninth Circuit concluded that the erroneous Notice of Full Reconveyance converted Countrywide's senior deed of trust into an equitable lien of equal priority. The foreclosure sale by Nevada Trust under a junior deed of trust did not extinguish this lien. The Ninth Circuit further reasoned that "[b]ecause [La Jolla and Frazier] aren't bona fide purchasers, Countrywide retains a valid lien on the home. Countrywide hasn't shown that it will be prejudiced by having to enforce this lien through a judicial foreclosure proceeding. See 4 Miller & Starr § 10:32 (equitable creditor's remedy is limited to judicial foreclosure)." Doc. 43-1, p. 4-5.

The Ninth Circuit held that Countrywide was not entitled to rescission of the foreclosure sale based on either of the two theories advanced: collusion between La Jolla and Frazier or failure to give adequate notice to the IRS. The former was rejected because Countrywide had not proved that it was prejudiced by any collusion between La Jolla and Frazier, i.e. there was no evidence to suggest that a procedural irregularity

contributed to the inadequacy of the price of the real property sale. The latter was rejected because California Civil Code section 2924(b)(c)(4), obligating trustees to notify the IRS of foreclosure sales, was enacted after the sale of the real property in question.

On May 12, 2011, in accordance with the Ninth Circuit's direction, this court issued its Amended Findings of Fact and Conclusions of Law and Order Amending Judgment and essentially adopted verbatim the language of the Ninth Circuit.

On May 27, 2011, this court issued a judgment with nine orders including that title to the subject real property be quieted in favor of La Jolla and Frazier, that this title to the property was subject to the pre-foreclosure tax liens, and that the amount of the equitable lien awarded to Countrywide consisted of the indebtness due under the deed of trust recorded on February 9, 1994.

On April 4, 2013, this court issued an order setting the amount of the equitable lien in the sum of $342,666.07 as of January 18, 2013 and $31.9713 per diem thereafter. The order was clear that "[n]o part of this order is to be interpreted as changing the nature of Countrywide's equitable lien. This order merely sets the amount." Doc. 322, 5:11-13.

On August 21, 2014, at the request of Countrywide, the clerk of the court issued a writ of execution to the sheriff of Fresno as well as an abstract of judgment. On December 9, 2014, again at the request of Countrywide, the clerk issued a second writ of execution to the sheriffs of Fresno and Sacramento counties. On February 10, 2015, a notice of levy was posted on the subject real property.

Now before the court are two matters: (1) Countrywide's application for order of sale of dwelling and issuance of order to show cause why order for sale of dwelling

should not be made and (2) La Jolla and Frazier's motion to recall and quash the writs of execution and the abstract of judgment, and to vacate the notice of levy.

**PARTIES' ARGUMENTS**

Countrywide argues in its application for order of sale of dwelling that abstract of judgment had specifically attached to the subject real property, that its equitable lien had equal priority to its senior deed of trust, and that the procedure for the sale of a dwelling pursuant to California Code of Civil Procedure section 704.640 had been fully complied with. Thus, Countrywide asserts, it can enforce its judgment under California collection methods, including compelling the sale of real property.

La Jolla and Frazier filed their motion on the grounds that the writs of execution and abstract of judgment were improperly issued since there was no money judgment entered in this action that would support their issuance. La Jolla and Frazier argue that, pursuant to the judgment entered on May 27, 2011, Countrywide has an equitable lien, and not a money judgment. Thus, Countrywide must judicially foreclose in order to enforce the lien. Under federal and California law, La Jolla and Frazier assert, only a money judgment is enforceable by writ of execution. See Fed. R. Civ. Proc. 69(a)(1) ("[a] money judgment is enforced by a writ of execution"); Cal. Code Civ. Pro. §§ 699.010, 699.510.

In response to La Jolla and Frazier's motion, Countrywide counters that the court's judgment reduced the equitable lien claim to a monetary amount. Countrywide argues that it is therefore not an equitable creditor because an equitable creditor does not

have an enforceable lien. Countrywide asserts that the only remedy available to an equitable creditor is judicial foreclosure because judicial foreclosure (1) establishes the rights to an equitable lien, (2) establishes the amount of the equitable lien, and (3) forecloses the lien. Thus, there is no reason for judicial foreclosure here because a judgment lien has already been established and the only thing left to do is apply to the Court for an order to sell the property.

Pursuant to directions issued by this court on May 5, 2015, the parties filed briefing about the application of the rule of mandate in general to the writs of execution and abstract of judgment and specifically to the order setting the amount of the equitable lien. In these supplemental briefings, Countrywide submits that the Ninth Circuit mandate is limited to:

> "CTC's erroneous Notice of Full Reconveyance converted Countrywide's senior deed of trust into an equitable lien of equal priority. The foreclosure sale by Nevada Trust Deed Services, Inc. under a junior deed of trust did not extinguish this lien. Defendants [La Jolla and Frazier] did not acquire the home free and clean of Countrywide's lien because they were not bona fide purchasers for value. Countrywide was not entitled to rescission [of the foreclosure sale] due to procedural irregularities."

Countrywide further asserts that the Ninth Circuit's opinion does not provide guidance on how this court should construe the language of the mandate. Accordingly, the rule of mandate does not require judicial foreclosure here nor preclude the order setting the amount of the equitable lien.

Conversely, La Jolla and Frazier argue that the scope of the mandate includes that Countrywide's deed of trust was converted into an equitable lien which must be enforced through judicial foreclosure proceedings. Since only a money judgment is enforceable

through a writ of execution, the issuance of the writs of execution and the abstract of judgment were in violation of the appellate court's mandate. Furthermore, under California law, La Jolla and Frazier assert, the amount of the lien is determined in the judicial foreclosure action and made a part of the foreclosure decree. Because the mandate dictates that the equitable lien should be foreclosed by judicial foreclosure, the order setting the amount of the lien is at least indirectly in violation of the rule of mandate.

**DISCUSSION**

The rule of mandate provides that a district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it. See Hall v. City of Los Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012); United States v. Cote, 51 F.3d. 178, 181 (9th Cir. 1995). At the same time, the rule of mandate allows a lower court to decide anything not foreclosed by the mandate. See Hall, 697 F.3d at 1067; Herrington v. Cnty. Of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993). A district court is limited by the Ninth Circuit's remand when the scope of the remand is clear. See Hall, 697 F.3d at 1067; Mendez-Guitierrez v. Gonzales, 444 F.3d 1168, 1172 (9th Cir. 2006). "[I]n construing a mandate, the lower court may consider the opinion the mandate purports to enforce as well as the procedural posture and substantive law from which it arises." United States v. Kellington, 217 F.3d 1084, 1093 (9th Cir. 2000). Violation of the rule of mandate is a jurisdictional error. See Hall, 697 F.3d at 1067; United States v. Thrasner, 483 F.3d 977, 982 (9th Cir. 2007).

Countrywide submits that the express mandate of the Ninth Circuit does not include that it must proceed through judicial foreclosure. However, the Ninth Circuit opinion establishes that Countrywide possesses an equitable lien and the remedy of judicial foreclosure. The Ninth Circuit found that "Countrywide hasn't shown that it will be prejudiced by having to enforce this lien through a judicial foreclosure proceeding. See 4 Miller & Starr § 10:32 (equitable creditor's remedy is limited to judicial foreclosure)." Doc. 43-1, p. 4-5. This is consistent with the substantive law, which reflects that judicial foreclosure is the appropriate remedy here. See Cal. Code Civ. Pro. § 725(a) et seq; Kaiser Industries Corp. v. Taylor, 17 Cal.App.3d 346, 352-53 (Cal. Ct. App. 1971); Wachovia Bank v. Lifetime Industries, Inc., 145 Cal.App.4th 1039, 1058 (Cal. Ct. App. 2006). Thus, in construing the scope of the Ninth Circuit's mandate, it is evident that this mandate includes the determinations that (1) Countrywide possesses an equitable lien and not a money judgment, and (2) if Countrywide wants to enforce this equitable lien, then it must go through judicial foreclosure.

To commence a judicial foreclosure, the foreclosing party must file a lawsuit in the county where the property is located. See Cal. Code Civ. Pro. § 725(a) et seq.; Arabia v. BAC Home Loans Servicing, L.P., 208 Cal.App.4th 462, 470 (Cal. Ct. App. 2012). For example, Arabia explained that under judicial foreclosure, instead of proceeding toward a foreclosure sale pursuant to the California Civil Code without court involvement, the plaintiff must prove its case to the satisfaction of the court. Id. At trial, the plaintiff must establish the subject loan is in default and the amount of the default. Id. If successful in proving the loan is in default, the plaintiff asks the court to order the

property sold to satisfy the loan balance. Id. The court then issues a decree stating the amount of the debt, that the security secures the debt, whether a potential deficiency judgment is reserved, and the order that the lien of the property be foreclosed by a sale overseen by the sheriff or other court officer. See Cal. Code Civ. Pro. § 726(b). The sale process is governed by the execution sale statutes found at Cal. Civ. Proc. Code § 716.020 and, if the potential for a deficiency is reserved, Cal. Civ. Proc. Code §§ 729.010-729.090. Since Countrywide has not proceeded through this judicial foreclosure process, La Jolla and Frazier's motion must be granted. See Hall, 697 F.3d at 1067. The Court will recall and quash the writs of execution issued on August 21, 2014 and December 9, 2014 and the abstract of judgment issued on August 21, 2014 and vacate the notice of levy posted on the subject real property on February 10, 2015.

Furthermore, the court has reconsidered its April 4, 2013 order setting the amount of the equitable lien and concluded that it must be vacated for lack of jurisdiction. The court entering judgment in judicial foreclosure is the court that declares the amount of the lien being foreclosed, and that enters judgment for sale of the property. The California statute governing judicial foreclosure specifically provides that "[t]he decree for the foreclosure of a mortgage or deed of trust secured by real property or estate for years therein shall declare the amount of the indebtedness or right so secured . . ." Cal. Code Civ. Pro. § 726(b). Thus, setting the amount of the equitable lien is part of the judicial foreclosure process. It does not follow that two different courts should declare the amount of the indebtedness. Since the rule of mandate requires that the equitable lien be enforced through judicial foreclosure, the court finds that its April 4, 2013 order was

contrary to the Ninth Circuit's mandate and therefore should be vacated for lack of jurisdiction. Violation of the rule of mandate is a jurisdictional error. See Hall, 697 F.3d at 1067.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's application for order of sale of dwelling and issuance of order to show cause why order for sale of dwelling should not be made is DENIED;
2. The writs of execution issued in this action on August 21, 2014 and December 9, 2014 and the abstract of judgment issued on August 21, 2014 are RECALLED and QUASHED;
3. The notice of levy posted on the subject real property on February 10, 2015 is VACATED; and
4. This court's April 4, 2013 order setting the amount of the equitable lien is VACATED.

IT IS SO ORDERED.

Dated: June 12, 2015

SENIOR DISTRICT JUDGE